DECISION
Plaintiff has appealed the real market value (RMV) of certain property for the 2009-10 tax year. Trial on the matter was held by telephone December 15, 2010. Plaintiff appeared on his own behalf. Also appearing for Plaintiff were his wife, Ann Do, and Plaintiff's son, David Do. Defendant was represented by David Babcock (Babcock), an appraiser with the assessor's office.
 Preliminary Matters
Prior to the commencement of trial, the court, on its own motion, excluded Defendant's improperly marked exhibits as untimely under TCR-MD 10 C(1) (2010).[1] However, during the course of trial, the court admitted several pages of Defendant's exhibits as rebuttal because they were relevant to testimony presented by Plaintiff. Specifically, the court admitted pages 2 and 3 of Defendant's summary appraisal report as well as exhibits E1 and F1. All of Plaintiff's exhibits were admitted. *Page 2 
 I. STATEMENT OF FACTS
The appeal involves the value of a three bedroom, two and one-half bath, single-story ranch-style home in Portland, built in 1951, that sits on a 1.4 acre oversized lot. The other structure on the property is a 640 square foot detached garage, also built in or about 1951.
Plaintiff purchased the property on August 7, 2009, for $220,000, with funds loaned him by his daughter. Plaintiff testified that he makes monthly payments to his daughter in repayment of that loan. Plaintiff acquired the property from a bank, but dealt with a real estate agent in negotiating the purchase. The bank obtained the property on or about June 1, 2009, because the prior owner/occupant was unable to continue making the mortgage payments. At the time the bank acquired the property, it was listed for sale for $369,900. (Ptf's Ex 1C.) The bank immediately reduced the asking price to $274,900. (Id.) The subject property had been listed for sale since February 2007. The asking price at that time was $599,500 and was repeatedly reduced over the next two and one-half years leading up to Plaintiff's August 2009 purchase at $220,000. (Id.)
The RMV on the assessment and tax rolls for the year under appeal, 2009-10, is $479,310, with $307,600 ascribed to the land and $171,710 to the improvements. The maximum assessed value (MAV) and assessed value (AV) are $296,910. Plaintiff appealed those values to the county board of property tax appeals (BOPTA), and BOPTA sustained the assessor's values. Plaintiff timely appealed to this court. Plaintiff seeks a reduction in RMV to $220,000, while Defendant asks that the court sustain the current RMV of 479,310. *Page 3 
 II. ANALYSIS
In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.
RMV is defined in ORS 308.205(1)[2] as follows:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
That statute further provides that RMV "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue and in accordance with [certain statutorily enumerated principles]." ORS 308.205(2). Those statutory principles that must guide the Department in its promulgation of valuation methods and procedures require an RMV determination based on "[t]he amount a typical seller would accept or the amount a typical buyer would offer that could reasonably be accepted by a seller of property[,]" and require that "[a]n amount in cash shall be considered the equivalent of a financing method that is typical for a property." ORS 308.205(2)(a) and (b). Finally, the statute provides that property without an immediate market value shall have an RMV "that would justly compensate the owner for loss of the property." ORS 308.205(2)(c).
The Department's rule, in turn, generally provides for the valuation of all real property based on the consideration of the three standard approaches to valuation. OAR 150-308.205-(A)(2)(a).[3] Those approaches are the sales comparison approach, the cost approach, and the *Page 4 
income capitalization approach. Id.; see also Appraisal Institute, The Appraisal of Real Estate 130 (13th ed 2008). The rule does not require the use of all three approaches, but merely the consideration thereof. However, often, as in this case, there is no appraisal.
The lack of an appraisal is not fatal because the Oregon Supreme Court has ruled that "[t]he various approaches to valuation * * * are only vehicles used to determine the ultimate fact-market value."Kem v. Dept. of Rev., 267 Or 111, 114, 514 P2d 1335 (1973). The court in Kem ruled further that "[a] recent sale of the property in question is important in determining its market value."Id. The court went on to state that "[i]f the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value."Id. (citations omitted).
Plaintiff's case hinges on the $220,000 purchase price just seven months after the applicable assessment date of January 1, 2009. The property had been on the market and listed for sale by various real estate agents for slightly more than 900 days (February 2007 to August 2009) with an initial asking price of $599,500, followed by a series of price reductions down to $274,900 in May 2009. Mrs. Do testified that she initially offered $240,000, but then withdrew her offer based on the advice of a real estate agent who told her the property was not worth $240,000, and that the "taxes were too high." According to her testimony, Mrs. Do relied on the agent's professional opinion, withdrew her $240,000 offer, and subsequently submitted an offer of $220,000, which the seller accepted.
The party seeking affirmative relief has the burden of proof and, initially, the burden of going forward with the evidence. ORS 305.427. The burden of proof in the Tax Court is a "preponderance" of the evidence. Id. A "[p]reponderance of the evidence means the greater *Page 5 
weight of evidence, the more convincing evidence."Feves v. Dept. of Revenue,4 OTR 302, 312 (1971) (citation omitted).
"The value of property is ultimately a question of fact[.]"Chart Development Corp. v. Dept. of Rev.,16 OTR 9, 11 (2001) (citation omitted). This court has previously noted that value is a range rather than an absolute.Price v. Dept. of Rev., 7 OTR 18, 25 (1977). Plaintiff presents the purchase price in support of his request for a reduction in RMV to $220,000. The court excluded Defendant's appraisal evidence because it was not timely submitted, and Defendant therefore has no evidence on value.
Defendant appears to believe Plaintiff's sale was not arm's-length. Defendant insists Plaintiff paid less than market value because he was able to purchase the property without bank financing, using money borrowed from his daughter. Babcock testified that the subject property "probably could not get financing" because it consists of a home on an oversized lot, with the majority of the value in the "excess land." Babcock testified that banks are reluctant to "lend on land." There is, however, no evidence to support Babcock's supposition regarding financing, and the court is not persuaded Babcock's viewpoint is relevant, given that the subject is improved with a residential structure and a detached garage. Moreover, given Babcock's testimony that the subject home is larger and generally superior to other homes in the area and appears to be a custom built structure on a large lot capable of being partitioned (or subdivided), a bank or other lending institution may well have extended a loan, particularly to a qualified buyer.
Mrs. Do's response, set forth above, was that she initially offered $240,000, but then withdrew her offer based on the advice of a real estate agent, and subsequently submitted an offer of $220,000, which the seller, a bank, accepted. *Page 6 
The current total RMV is $479,310, and Plaintiff is seeking a reduction to the $220,000 purchase price. Such a reduction would be substantial. However, the assessment history shows that the property's RMV was increased considerably for the 2004-05 tax year based on the addition of the public sewer system, and possibly a rezoning. According to Babcock, the substantial value increase[4]
was due to a "land site development exception." The $95,050 increase in the land RMV in 2004, all of which was exception value that year, was designed to capture the value of two "additional lots." Those additional lots are conceptual, and rooted in the appraisal principle of highest and best use. In Defendant's view, the subject went from an oversized lot to three lots because the city extended a sewer line to the subject property in March 1995, which, based on a zoning of R5, [5] enables Plaintiff to partition the property into at least three lots.[6] Babcock further testified that the additional value was conservative because the subject is actually zoned R2 which Babcock "believed" allowed for a lot a small as 2,000 to 2,500 square feet.
It is not clear from the evidence that the value increase was handled correctly by Defendant. The code Defendant used to identify the value increase reads "CON," which Babcock testified stood for "new construction;" there was no new construction in this case. Babcock was unable to explain that coding error. That leaves the possibility that there was an error in Defendant's 2004 value increase, a value which was then trended forward in subsequent tax years up to the 2009-10 tax year. *Page 7 
Additionally, the city's sewer goes through the subject property; Babcock testified that Plaintiff would have to remove the existing garage in order the divide the lot and develop the other potential lots. The existence of the city's sewer line, running through, albeit underneath, the subject property, would likely have a financial impact on any development. Such an impact would likely reduce the value of the property.
 III. CONCLUSION
After a careful review of the evidence in light of applicable law and appraisal principles, the court concludes that the RMV of the subject property as of January 1, 2009, was $220,000. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted and Defendant shall correct assessment and tax rolls to reflect the court's RMV reduction, including an adjustment to AV from the current number of $296,910 to $220,000 as required by ORS 308.146(2) (providing that AV is the lesser of the property's RMV or MAV).[7]
Dated this day of June 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Dan Robinsonon June 15, 2011. The Court filed and entered this documenton June 15, 2011.
[1] All exhibits are to be either postmarked at least 14 days before trial or physically received at least 10 days before trial.See Tax Court Rule-Magistrate Division (TCR-MD) 10 (C)(1). Defendant faxed its exhibits to the court December 6, 2010, and apparently sent them by mail, which arrived December 10, 2010. Trial was December 15, 2010. Defendant's facsimile transmittal was one day late and, the rule prohibits the submission of exhibits by facsimile without the prior approval of the magistrate. TCR-MD 10 (C)(2).
[2] All references to the Oregon Revised Statutes (ORS) are to 2007.
[3] References to the Oregon Administrative Rules (OAR) are to the current edition of those rules.
[4] The land RMV was increased from $88,880 in 2003 to $183,930 in 2004. (Ptf's Ex 1B at 3.)
[5] R5 is a zoning designation which allows for a lot as small as 5,000 square feet.
[6] The subject property is approximately 1.4 acres. An acre is equivalent to 43,560 square feet. The subject is, therefore, approximately 60,984 square feet.
[7] As stated earlier in the court's decision, the property's MAV and AV, as set by Defendant and sustained by BOPTA, are $296,910, which is approximately $77,000 more than the court's RMV reduction to $220,000.
 *Page 1