## IN THE OREGON TAX COURT
## REGULAR DIVISION

CHART DEVELOPMENT CORPORATION,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*

*and*

WASHINGTON COUNTY ASSESSOR,
*Intervenor-Defendant.*

(TC-4513)

Chuck H. Olson argued the cause for Plaintiff (taxpayer) *pro se*.

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, filed an Answer for Defendant (the department), but did not argue the cause.

Elmer M. Dickens, Washington County Assistant County Counsel, Portland, argued the cause for Intervenor-Defendant (the county).

Decision for Defendant and Intervenor-Defendant rendered December 4, 2001.

**HENRY C. BREITHAUPT, Judge.**

Plaintiff (taxpayer) appeals from a Decision of the Magistrate Division regarding the 1999-2000 real market value (RMV) of 10 out of 11 undeveloped subdivision lots located in Beaverton, Oregon. Washington County (the county) intervened for Defendant Department of Revenue (the department), which did not participate.

## FACTS

The subject lots are located on the north side of Southwest Canyon Road in the City of Beaverton with easy access to Highway 26. Most of the lots are relatively rectangular, feature a slight southwest slope, and range in size from 8,066 to 8,746 square feet. Some of the lots are directly exposed to the heavy traffic typical of Southwest Canyon Road.

As of January 1, 1999, the county valued the lots at $124,000 each. Over the following two years, taxpayer sold the lots for prices in the range of $86,800 to $112,000. The

Magistrate Division reduced the RMVs of the 10 lots to their ultimate sale prices.[1] Taxpayer requests this court to further reduce the RMVs to the prices at which they were ultimately sold with a time-trend of 9 percent back to January 1, 1999, resulting in values ranging from $70,681 to $95,570. The county's Answer requests affirmation of the magistrate determination. At trial, the county submitted the appraisal report of John Alve, a registered property appraiser, and argued for Alve's opinions of value, which range from $101,600 to $114,500.

## ISSUES

1.  What is the real market value of each of the 10 lots as of January 1, 1999?

2.  Should the court be limited by the pleadings when determining value in property tax cases?

## ANALYSIS

*Real Market Value*

On those issues of fact, taxpayer bears the burden of proof. ORS 305.427.[2] Although Defendant has the benefit of a rebuttable presumption of procedural rectitude, the valuation assigned benefits from no such presumption. *J. R. Widmer, Inc. v. Dept. of Rev.*, 261 Or 371, 377, 494 P2d 854 (1972). The value of property is ultimately a question of fact, and this court has the responsibility of making an original, independent, and *de novo* determination of value. *See Mid Oil Co. v. Dept. of Rev.*, 297 Or 583, 686 P2d 1020 (1984).

■ The RMV of land is what in prior years was referred to as "true cash value." If RMV is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the

---

[1] At that point in time, all but two of the lots had been sold. For the unsold lots, the magistrate set RMVs of their unadjusted list prices.

[2] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 1999.

assessment date for the tax year." ORS 308.205(1). That definition of value should be distinguished from other definitions. It is the value based on market worth rather than investment expectation or insurance value. *See* Appraisal Institute, *The Appraisal of Real Estate*, 20-21 (12th ed 2001).

■      Despite changes in statutory language, the fundamental value definition has been consistent for many years, and the law is clear that if a market exists for property of the kind being assessed, the property must be evaluated by the market data approach. *Portland Canning Co. v. Tax Com.*, 241 Or 109, 113, 404 P2d 236 (1965); *see also* OAR 150-308.205-(A). Unless it is shown that the conditions affecting the value of real property have changed, a recent sale can be persuasive evidence of market value. *Ernst Brothers Corp. v. Dept. of Rev.*, 320 Or 294, 300-05, 882 P2d 591 (1994) (citations omitted). However, a sale is not necessarily determinative and will be disregarded if evidence demonstrates the sale is out of line with other market data. *Id.* at 300 (citations omitted).

■      Taxpayer's main contention is that the values of the subject properties can be established by taking the ultimate sales[3] of the lots in question and arriving at RMV by trending those sale prices back to the assessment date using a 9 percent discount factor.[4] Taxpayer argues that it is a **requirement** that RMV be determined **in all cases based upon the sale price of the property**. As discussed above, RMV is the amount in cash for which a property would be **expected** to sell as of an assessment date. Or Const, Art XI, § 11(11)(a); ORS 308.205. It is essentially an estimate of fair market value. The definition of RMV does not dictate the use of the actual sale prices of properties. The constitutional and statutory provisions state a goal rather than a specific piece of evidence that must be conclusively used in arriving at that goal.

---

[3] The sales occurred between February 2000 and January 2001.

[4] Taxpayer suggests a 9 percent discount factor because that rate was used by the assessor to adjust the assessed values for that area to the relevant appraisal date. Trend factors are derived from ratio studies that annually analyze the relationship between the sale prices of properties. ORS 309.200. Because trend factors are used generally for properties located in specific areas, they do not take into account features of individual properties as do appraisals.

Taxpayer is proposing a formulaic approach to valuation that finds no basis in the statutory or case law of this state. Indeed, if taxpayer's suggested approach to valuation had validity, appraisals would have become unnecessary in valuation disputes and would have been replaced by simple projections backwards or forwards from actual sales. Any legal debate would have shifted from consideration of factors such as zoning, location, conditions of sale, and size, to a consideration of what the appropriate discount rate or rates should have been for various time periods. That is not what is reflected in the case law. *See generally Widmer v. Department of Revenue*, 4 OTR 361, 366 (1971), *aff'd*, 261 Or 371, 494 P2d 854 (1972).

■ Challenging the taxpayer's contention that the discounted sale prices are the RMVs for the subject properties, the county argued that the sales were not arm's-length transactions and that a change in the market occurred between the date of assessment and the sale dates. The county reasons that because some of the lots were sold in bulk, such a sale fails to accurately reflect the values of individual lots by asserting that a developer's discount was used to arrive at the sale prices. Such discounts are not representative of market value, but focus on an owner's interest. *First Interstate Bank v. Dept. of Rev.*, 10 OTR 452 (1987), *aff'd*, 306 Or 450, 760 P2d 880 (1988).

In defense of its position, the county presented the appraisal report of Alve. Alve performed a market-data appraisal report using 40 comparable sales. Adjustments were made for dissimilarities from the subject properties, such as location, size, date of sale, topography, etc. Focusing on the five properties he found were most directly comparable, Alve developed a value per square foot figure, relying most heavily on the value indicator from the January 25, 1999, sale of a lot in the same subdivision as the subject properties. From that, Alve arrived at his opinion of values. Although taxpayer questioned Alve's appraisal, it did not show or provide any evidence that the appraisal is unreliable.

*Pleading*

■ Although taxpayer's sale prices are some evidence, the county has shown by its comparable sales that an active

market existed at the time of assessment, which demon-strates a change in the market between the assessment date and the date of actual lot sales. The county's proof at trial is sufficient to support a finding that the values of the proper-ties were as found in Alve's appraisal report. However, the county did not plead those appraisal values in its Answer. Instead, the county prayed for "an order * * * affirming the decision of the Magistrate." In its written closing argument, the county requested that this court enter an order upholding the values found by Alve in his appraisal report.

■    The county's pleading would not have been an issue between 1977 and September 1, 1997. During that period, ORS 305.435 made clear that this court was not limited by the pleadings in property valuation cases. However, *former* ORS 305.435 was repealed, effective September 1, 1997. Or Laws 1995, ch 650, § 114.[5] That places the current statutory treatment of pleadings in the status held prior to the 1977 amendment of ORS 305.435. *See* Or Laws 1977, ch 870, § 30. Prior to that amendment, this court held that it would not claim jurisdiction to find values outside the limits set by the pleadings. *Bauman et al v. Dept. of Rev.*, 6 OTR 426, 438-40 (1976).

The analysis in *Bauman* deals with the authority of this court under the former statute, which provided that this court could "affirm, reverse, modify or remand orders of the department."[6] ORS 305.435 (1975). This court may well have the authority to find values outside of the pleadings; how-ever, avoiding unfair surprise, as recognized in *Bauman*, and other reasons weigh in favor of limiting a party to its plead-ings. Indeed, the notice of position contained in the county's pleadings in this case also served to notify the department of the position for which the county was contending.[7] If a county

---

[5] A comparable provision for income tax cases has been left undisturbed. *See generally* ORS 305.575.

[6] The role of the department in hearing appeals was supplanted by the creation of the Magistrate Division and appeals from those decisions are heard as original, independent, and *de novo* proceedings. *See* ORS 305.425; *see generally* Or Laws 1995, ch 650.

[7] While this was seemingly no surprise to the department in this case because the department had earlier filed an Answer with the same prayer for relief as that of the county, it is important that the department be apprised of the position taken by a county or other party.

or other party can change its position as to relief requested without seeking to amend its pleadings, the department's ability to perform its statutorily mandated supervisory function, through, perhaps, more active intervention in the case, could well be impaired. *See generally* ORS 306.115. For those reasons, this court will not find values outside the limits of the pleadings of the parties in the case.[8]

*Uniformity*

■       Taxpayer also argues that the valuations here are inconsistent with the uniformity requirements of the Oregon Constitution and ORS 307.030. Taxpayer has made the common error of attempting to convert a valuation argument into a uniformity complaint by assuming that other properties are comparable, in absolute terms, to the subject properties, but are valued at lower levels. Merely showing that other properties have lower values does not prove the lack of uniformity. That is because different values could be the result of different features or characteristics and not the result of the application of a different valuation methodology to apparently similar properties.

■       What is required in Oregon is "relative" uniformity, that is, uniform operation of law, not uniformity of consequences. *Robinson et ux v. State Tax Com.* 216 Or 532, 536, 339 P2d 432 (1959). For example, a successful uniformity claim resulted where a taxpayer established the similarity of its property with neighboring properties and showed that the taxing authority had a practice of creating a separate classification and methodology when assessing its land in comparison to the similar properties. *Penn Phillips Lands v. Tax Com.*, 247 Or 380, 384-86, 430 P2d 349 (1967). In this case, taxpayer has not shown that the properties it used for uniformity comparison were, in all material respects, comparable to its properties or that the county used a different methodology in valuing those properties.

---

[8] Absent action from the legislature, attention to pleadings and amendments of pleading to conform with proof is critical.

*Conclusion*

Taxpayer did not meet its burden of proof in showing that the county's appraisal values are unreliable or in violation of uniformity requirements. However, the court concludes that with the repeal of *former* ORS 305.435, it will limit its determination to the values requested in the county's pleadings. Accordingly, the court finds that the RMVs of the subject properties as of January 1, 1999, are in accordance with the Decision of the Magistrate Division as follows:

| Account No. | Current RMV | Adjudicated Value |
|---|---|---|
| R2081715 (lot 1) | $115,000 | $112,000 |
| R2081717 (lot 3) | $115,000 | $100,000 |
| R2081718 (lot 4) | $115,000 | $100,000 |
| R2081719 (lot 5) | $115,000 | $105,000 |
| R2081720 (lot 6) | $110,000 | $ 97,500 |
| R2081721 (lot 7) | $104,000 | $100,000 |
| R2081722 (lot 8) | $104,000 | $ 98,500 |
| R2081723 (lot 9) | $104,000 | $ 98,500 |
| R2081724 (lot 10) | $104,000 | $ 98,500 |
| R2081725 (lot 11) | $ 98,500 | $ 98,500 |

Judgment will be entered consistent with this Opinion. Costs to neither party.