DECISION
Plaintiff appeals the real market value of property identified as Account 11622 for tax year 2009-10. A trial in the matter was held by telephone on January 19, 2011. Patsy J. Mault, Assessor, appeared on behalf of Plaintiff. Donald V. Reeder, Esq., of Glenn, Sites, Reeder Gassner LLP, Madras, Oregon, appeared on behalf of Defendant. Jeffrey Dart (Dart), Residential and Commercial Appraiser, testified for Plaintiff. Harold Siegenhagen (Siegenhagen), Mark Reynolds (Reynolds), Appraiser; Philipp Agrue (Agrue), Personal Investigator; and Bill Bellamy (Bellamy), Realtor, testified for Defendant.
Plaintiff's Exhibit 1 and Defendant's Exhibits 101, 102, and 103 were received without objection.
 I. STATEMENT OF FACTS
The subject property is a high-quality custom built Tuscan-style home, approximately 2700 square feet in size, with two bedrooms and two bathrooms. The home was constructed in November 2008 on a one-half acre lot in Madras, Oregon. (Ptf's Ex 1-1; Def's Ex 102 at 2, 4.) The uncontroverted evidence is that Siegenhagen purchased the property in September 2007 for $167,500 and demolished the home that was on the property at that time. (Ptf's Ex 1-1.) Siegenhagen then hired a custom builder to construct the existing home at a reported cost of $781,790. (Id.) According to the testimony of Dart and Seigenhagen, the home was built in *Page 2 
2008. Dart testified the home was completed in November 2008, which is approximately one month before the January 1, 2009, assessment date for the 2009-10 tax year.
The new home, which is the subject of this appeal, has a tile roof, stucco siding, a 15 foot finished would ceiling in the living room, extensive custom built-ins, some nine foot architectural-vaulted ceilings, two fireplaces, a combination of tile and wood flooring, solid core interior wooden doors, and custom wood-wrapped windows. (Ptf's Ex 1-1; Def's Ex 102 at 4, 5, 8; trial testimony.) The home sits on a bluff, and the parties agree the home has a very nice view.
The home has a three-car garage with a sealed epoxy floor that is between 1305 square feet and 1724 square feet.[1]
(Ptf's Ex 1-1; Def's Ex 102 at 4-5, 8.) The home's surroundings include a gated paved courtyard with a water feature and a fully enclosed stucco privacy wall with stone pillars at the electric entrance gate. (Ptf's Ex 1-1.)
The assessor valued the home at a real market value (RMV) of $653,230 and an assessed value (AV) of $327,260 as of January 1, 2009. (Ptf's Compl at 3.) Taxpayer appealed those values to the Jefferson Board of Property Tax Appeals (BOPTA), which subsequently issued an order on March 22, 2010, that reduced the RMV to $517,500 and the AV to $262,492. (Id.) Plaintiff timely appealed from that order to this court on April 2, 2010. (Ptf's Compl at 1.)
The county appraiser Dart testified that he valued the subject property using a market-based cost approach. He did not submit an appraisal or the calculations for his cost-based analysis. Dart determined that the total RMV should be $653,230, with the total improvement *Page 3 
value at $585,730 and the balance attributable to the land. Dart testified that he valued the 2,671 square foot main floor area at $387,561 ($145 per square foot). Dart valued certain additional components of the home (e.g., the bathrooms, tile roof, stucco siding, fireplaces, heat pump, security system, etc.) at $45,524 for a total value of the home of $433,085. He valued the three-car garage at $109,059, and added $43,589 for certain "yard improvements."
Siegenhagen had the property appraised for financing prior to this appeal, and apparently had presented that appraisal to BOPTA. Siegenhagen testified that he could not remember the precise value estimate, but believed it was "about $800,000." The county contends that the appraiser estimated the value to be $900,000. The appraisal report that Siegenhagen presented to this court valued the subject property at $400,000 as of the January 1, 2009, assessment date. (Def's Ex 102 at 2.) That report included the results of the sales comparison approach that Siegenhagen's appraiser, Renyolds, applied in order to determine the subject property's RMV. (Id. at 5-6.) Reynolds chose not to perform a cost analysis because:
 "Under the market conditions present as of the effective date of the appraisal homes are selling for less than replacement or reproduction costs due to significant over-supply. In addition, the subject home is determined to be an over-improvement and would suffer from obsolescence in which costs to construct exceed value."
(Id. at 7.)
Reynolds' sales comparison analysis included four comparable sales of residential properties located in the same city as the subject property. (Id. at 5-6.) Reynolds testified that all of his comparables were "upper-end" homes for the area. Reynolds noted that "[c]omparables #1 and #3 [have] an inferior quality of construction as compared to the subject which features a more extensive use of quality features and finishes." (Id. at 5.) Reynolds further added that "[c]omparable #2 [has] an older close date and was utilized as a comparable due to the lack of sales of similar homes in the area." (Id.) Reynolds adjusted the comparables' *Page 4 
sales prices to account for those differences described above and other factors. (Id.)
Bellamy, a realtor, also testified for Defendant. He explained that differences in value exist between properties located within Madras city limits and properties beyond those limits. Properties located outside of city limits tend to sell at a higher price because they usually have larger lots. However, the subject property is located within city limits. Bellamy noted that from the real estate market's peak in 2006-07 to the January 1, 2009, assessment date, only two properties within city limits sold for over $300,000. He said that as of the trial date, only eight real estate listings in or around Madras have sales prices over $250,000, and that all of them are located outside city limits.
Agrue, Siegenhagen's personal investigator, offered photos of the subject property and other homes on the same street. Regarding the subject property's surroundings, the county claims that the subject property is "[w]ithin 1000 feet of * * * a golf resort community [that] is being developed and a state-of-the-art aquatic center [that] was built in 2007." (Ptf's Ex 1-1.) When questioned by the court, Siegenhagen testified that there is a nine-hole golf course on the "far side of town." More specificity on the matter would have been helpful. It appears to this court that, as of the assessment date, the only existing golf course was the nine-hole course on the other side of town, but that development of a new "golf resort" is underway.
 II. ANALYSIS
The issue before this court is the RMV of the subject property for tax year 2009-10. ORS 308.205(1)[2] defines RMV for both real and personal property as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(2) provides that RMV "in all cases shall be determined by methods and *Page 5 
procedures in accordance with rules adopted by the Department of Revenue[.]" Those methods and procedures are listed in OAR 150-308.205-(A)(2)[3] and include (1) the sales-comparison approach; (2) the cost approach, and (3) the income approach. The appraiser must consider all three of those approaches when determining RMV, but need not use the results obtained by any of those approaches, or even develop a value estimate for all three approaches. Id.
Plaintiff purports to have determined the 2009-10 RMV of the subject property by means of the cost approach. That method is appropriate for the subject property, which was built in 2008, "[b]ecause cost and market value are usually more closely related when properties are new [or close to new.]" Appraisal Institute, The Appraisal of Real Estate 382 (13th ed 2008). However, Plaintiff did not submit any materials to show the reasonableness of its calculations, and Plaintiff's appraiser, Dart, did not testify as such, other than to say that he subtracted 14 percent from the costs he calculated to adjust for negative market conditions. Dart testified that he performed a "market-based" analysis, but he did not specify whether he applied the reproduction or replacement technique as required by OAR 150-308.205-(A)(2)(f). Dart provided no evidence of whether he relied upon cost-estimating services or cost index trending, and gave no other details to help this court decide upon the accuracy of his analysis.
The county, as Plaintiff, has the burden of proof in its quest to increase the RMV of the subject property back to the value it placed on the property before BOPTA reduced the RMV. ORS 305.427. The burden of proof in this court is a preponderance of the evidence, which means "the greater weight of evidence, the more convincing evidence." Id.; Feves v. Dept. of Revenue,4 OTR 302, 312 (1971) (citation omitted). This court views the value of property "ultimately [as] a question of fact," and considers any individual determination of value to be *Page 6 
only one value within a range of values, not an absolute value.Chart Dev. Corp. v. Dept. of Rev., 16 OTR 9, 11 (2001);Price v. Dept. of Rev., 7 OTR 18, 25 (1977).
Because Plaintiff did not present any evidence beyond the testimony of its appraiser regarding the estimated cost to build the subject property, without reference to a specific methodology or index for determining costs, this court finds that Plaintiff did not meet its burden of proof. As such, this court need not continue any further to consider Defendant's evidence or its application ofFritz v. Dept. of Rev., 7 OTR 375 (1977) to this case. Moreover, Defendant, both in its initial Answer and Amended Answer, requested only that this court "confirm[] the decision of the Jefferson County Board of Property Tax Appeals." (Def's Ans at 1; Def's Amended Ans at 1.)
Lastly, although ORS 305.412 allows this court to "determine the [RMV] or correct valuation [of property] on the basis of the evidence before the court, without regard to the values pleaded by the parties[,]" this court finds insufficient evidence to determine a value different from that found by the local BOPTA. Those values are $517,500 for the total RMV, with $67,500 ascribed to the land and $450,000 to the improvements, $459,500 for the exception RMV, and $262,492 for the maximum assessed value (MAV) and assessed value (AV). The court is admittedly somewhat troubled by the fact that Seigenhagen invested $949,290 in the home (including the September 2007 purchase for $167,500 and the $781,790 cost to construct the new home), and that Seigenhagen had the property appraised for between $800,000 and $900,000 after the new home was completed. However, Defendant's witnesses testified to the difficulty selling a home of quality of the subject in the town of Madras, and presented an appraisal valuing the property of $400,000 as of January 1, 2009. *Page 7 
 III. CONCLUSION
After giving careful consideration to the evidence, this court finds that Plaintiff did not meet its burden of proof in this property tax appeal. Now, therefore,
IT IS THE DECISION OF THIS COURT that the BOPTA order for tax year 2009-10 be upheld. Those values are $517,500 for the total RMV, $459,500 for the total exception RMV, and $262,492 for the MAV and AV.
Dated this ____ day of October 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Dan Robinsonon October 14, 2011. The Court filed and entered this documenton October 14, 2011.
[1] The Plaintiff reports that the size of the garage to be 1724 square feet. (Ptf's Ex 1-1.) The taxpayers' appraiser reports the garage to be 1305 ft. (Def's Ex 102 at 5.) There was not a great deal of testimony specific to the garage, and the photographs submitted by the parties reveal that the structure is large and somewhat non-uniform in terms of shape, but the size is difficult to gauge. It is not entirely clear what impact the discrepancy in the size of the garage has on the final determination of value. The Plaintiff did not submit its specific calculations, but did report that it valued that structure under the modified cost approach, and the taxpayers' appraiser made adjustments to three of his four comparables due to differences in size between the subject and those comparables.
[2] All references to Oregon Revised Statutes (ORS) are to the 2007 edition.
[3] All references to Oregon Administrative Rules (OAR) are to the 2009 edition. *Page 1