IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

KLEEN SOLUTIONS INC.     )
and DEAN STOCKWELL, PRES.,   )
             )
   Plaintiffs,      )  TC-MD 100988C
             )
   v.         )
             )
LANE COUNTY ASSESSOR,    )
             )
             )
   Defendant.     ) **DECISION**

This is an appeal from certain omitted property assessments made by Defendant for the

2009-10 tax year on April 5, 2010. Plaintiff timely appealed. Trial in the matter was held by

telephone April 7, 2011. Plaintiff is represented by Dean Stockwell (Stockwell), President of

Kleen Solutions, Inc. Defendant was represented by Lane County Counsel Mark Kardell

(Kardell). Testifying for Defendant was Daniela Urbatzka (Urbatzka), Property Tax Manager,

Lane County assessor's office.

## I. STATEMENT OF FACTS

The appeal involves the real market value (RMV) of 50 items of personal property

machinery equipment Defendant added to the rolls as omitted property because Plaintiff did not

file personal property returns in Lane County reporting the items at issue. (Def's Ex F.) There

are 16 accounts involved.[1] (*Id*.) Defendant initially valued the equipment at approximately

$108,000 total RMV. (Def's Ex F-2.) Defendant worked with Stockwell for a number of

months both before and after the appeal was filed with this court and revised its original RMV

---

[1] Urbatzka testified that the appeal involves only 13 accounts. She also indicated in the Answer that personal property returns were filed by three lessees. That may account for the difference in the number of accounts (thirteen versus sixteen). The 16 account numbers are: 5645021, 5645022, 5645023, 5645024, 5645035, 5645036, 5645037, 5645038, 5645039, 5645040, 5645041, 5645042, 5645043, 5645044, 5645045, and 5645046. (Ptfs' Compl at 2-17; Def's Ex F.)

downward to $77,045 in its trial exhibits (Def's Ex F-2). Then, at trial Defendant testified that it had obtained additional information indicating an even lower value of $50,352. (Kardell's Opening Statement and Urbatzka's Trial Testimony.) It is that final value of $50,352 that Defendant is asking the court to conclude is the correct RMV for the omitted property for tax year 2009-10.

Stockwell insists that the value is somewhere between $11,000 and $14,000. Stockwell presented the $14,000 figure in his opening statement and a value of $11,429 during his trial testimony. Stockwell insists that the total RMV of the equipment at issue is below the taxable assessed value threshold and that there should therefore be no tax, penalty or interest imposed.

Stockwell did not file personal property tax returns with Lane County for any of the property here at issue. Defendant added the property to the assessment and tax rolls when it became aware that the property was located in Lane County and being operated therein.

Defendant notes in its Answer that it received three different itemized property lists for Plaintiffs for the 2009-10 tax year. (Def's Answer at 1.) The first list was provided by Linn County in June 2009, and consists of information included in a 2009 personal property return Plaintiffs filed with Linn County. That listing includes an owner's opinion of value ranging from $1755 to $2800 per item for a total of just under $100,000. The second listing was faxed to Defendant by Stockwell in October 2009 after Defendant had notified Plaintiffs that the businesses leasing the equipment had not filed the statutory required returns reporting the value of that property to the assessor. The values on that list are considerably lower, ranging from between $300 and $400 per item, for a total of $14,900. (*Id.*) The third list was included with Plaintiffs' appeal. It lists values ranging from between $50 and $400, with the exception of one item valued at $2908. The total value on that list is $11,420 (rounded).

Stockwell in the business of buying used commercial dishwashers and then leasing them to various businesses in Oregon and elsewhere. This appeal involves the RMV of such equipment owned by Plaintiff sand having its having situs in Lane County. Plaintiffs lease the property to approximately 40 different restaurants in Lane County.

## II. ANALYSIS

There is no dispute about whether the property at issue is subject to property taxes. ORS 308.105(1) (providing that, with certain exceptions not here applicable, "all personal property shall be assessed for taxation each year at its situs as of the day and hour of assessment.")[2] Moreover, personal property "may be assessed in the name of the owner or of any person having possession or control thereof." ORS 308.105(2). Thus, even though Stockwell leases the property, Defendant may, and has, legally assessed the property to Plaintiffs because they own the property.

The issue in this case is the RMV of the subject property for purposes of property assessment and taxation. RMV is defined in relevant part as follows:

> "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1).

RMV is to be determined by methods and procedures adopted by the Oregon Department of Revenue in accordance with certain statutorily enumerated principles. ORS 308.205(2). Those statutory principles that must guide the Department in its promulgation of valuation methods and procedures require an RMV determination based on "[t]he amount a typical seller would accept or the amount a typical buyer would offer that could reasonably be accepted by a

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2007.

seller of property[,]" and require that "[a]n amount in cash shall be considered the equivalent of a financing method that is typical for a property." ORS 308.205(2)(a) and (b).

The Department's rule, in turn, generally provides for the valuation of all real property based on the consideration of the three standard approaches to valuation. OAR 150-308.205-(A)(2)(a).[3] Those approaches are the sales comparison approach, the cost approach, and the income capitalization approach. *Id*.; *see also* Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008). The rule does not require the *use* of all three approaches, but merely the consideration thereof. However, often, as in this case, there is no appraisal.

RMV as defined above "should be distinguished from other definitions. It is the value based on market worth rather than investment expectation or insurance value. See Appraisal Institute, The Appraisal of Real Estate, 20-21 (12th ed 2001)." *Chart Development Corp. v. Dept. of Revenue*, 16 OTR 9, 12, (2001) (Chart).

Plaintiffs are relying on a variation of the sales comparison or market approach to value, while Defendant has utilized the depreciated cost approach method. As indicated above, however, neither side submitted an actual appraisal.

Plaintiff has been in business for some 20 years and struck the court as a person very knowledgeable about the used commercial dishwasher business, both from the acquisition and leasing perspectives, although his record-keeping and accounting practices seem somewhat haphazard and deficient.[4] According to the Plaintiffs' evidence, Stockwell pays between $200

---

[3] References to the Oregon Administrative Rules (OAR) are to the current edition of those rules.

[4] For example, Defendant tried for months to get income and expense information from Stockwell in an effort to value the property under the income approach, but Stockwell advised Defendant that he did not keep such information. During trial, Defendant questioned Stockwell about his business practices, including the repair services he provides and associated costs to the company, and Stockwell testified that he did not keep such information. Furthermore, along those lines, Stockwell testified that he had no idea whether a particular dishwasher or customer account made a profit or loss in any given year.

and $500 for the used machines he purchases. He then leases those machines for amounts ranging from $1500 to $2000 per year. (Def's Ex B.) Stockwell testified that sometimes loses money on the machines he leases but some of his lessees purchase additional products. Stockwell testified that the related products sales generate additional revenue.[5] Stockwell's testimony and evidence, while interesting, struck the court is somewhat self-serving. His testimony also was not consistently credible.

For example, although Stockwell testified that he does not repair or refurbish the dishwashers before he leases them, there is evidence Stockwell provided Defendant and the court suggesting Stockwell does in fact refurbish at least some of the equipment he purchases. In the packet of information Stockwell submitted with the letter on Kleen Solutions, Inc., letterhead dated January 25, 2011, Plaintiffs included printouts of various dishwashers offered for sale on eBay. (Jan 25, 2011, Ltr, Ex C.) Page 3 of that exhibit includes a handwritten note by Stockwell which reads: "This is a completely refurbished dishwasher which I also cannot afford. I only purchase machines in the 200 to 500 range which are much older *or not working*." (Emphasis added.) If Stockwell is leasing the equipment he purchases, logic dictates that he is repairing at least some of the machines he buys (i.e., the machines that are not working when he buys them). Moreover, the majority of the machines Stockwell purchases are quite old and would logically need some routine maintenance before being released to restaurants, where there subjected to considerable wear and tear.

Additionally, Stockwell presented his case in the very confusing fashion, relying on information submitted with his original Complaint (53 pages in all including the one-page Complaint form), and packets of information he sent to the court in January and March 2011,

---

[5] The additional products include degreasers, bathroom paper products (toilet paper and hand towels), bathroom soaps, soaps to clean pots and pans, floor cleaners, air fresheners, drain cleaners, etc.

most of which was not marked, as required by court rule. *See* TCR-MD 10 B.  In support of his market approach, Stockwell presented approximately 10 invoices for equipment that he purchased (mostly used) from commercial retailers and private parties (primarily through eBay). (Ptf's Complaint at 38-52.)  Stockwell testified he buys most of his equipment from sellers marketing their goods on two well-known Internet goods and services marketers: eBay and Craigslist.  However, the court does not find that information to be very reliable because it lacks sufficient detail and it is unclear whether Stockwell or the seller prepared some of the information.  Furthermore, it appears, as Defendant asserts, that Stockwell acquires his machines at the bottom end of the value range, if not below any such range, cleans up the machines and makes any necessary repairs and adjustments, and then leases the equipment.  The court is simply not persuaded that Plaintiff is paying actual market value.  Additionally, it is unclear exactly how much Plaintiff paid for many of the dishwashers, and thus, such market evidence, if it were deemed reliable, is simply unpersuasive.

Defendant appears to have put great deal of time into ascertaining exactly what equipment Plaintiffs own (model number and year), and then utilizing information provided by Stockwell and additional sales (cost) information Defendant obtained over the Internet regarding at least one other commercial dishwasher retailer (Food Services Warehouse, hereinafter referred to as "FSW"), then applied depreciation based on information it obtained from the Oregon Department of Revenue (Def's Ex E.)  Utilizing that approach, Defendant arrived at a total RMV of $77,045.  (Def's Ex F-1and F-2.)  However, Defendant continued to refine its valuation based on additional information on model numbers provided by Stockwell and original cost new information from the FSW materials it found on the Internet.  At trial, Defendant indicated that the additional valuation efforts it undertook resulted in a lesser value of $50,352.

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. In this case, it is Plaintiffs that are seeking affirmative relief in the form of a reduction in the RMV. Plaintiffs, therefore, bear the burden of proof and must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)).

As indicated above, the court that has not found Plaintiffs' evidence to be more convincing than the value evidence presented by Defendant. Defendant presents an RMV of $50,352, as set forth in its exhibits F and D. In those exhibits Defendant provides a breakdown of the RMV by account. The court will charge Defendant with the responsibility of allocating the $50,352 RMV between the property associated with the various accounts.

### III.  CONCLUSION

On the evidence before it, the court concludes that Plaintiffs have failed to establish their case by a preponderance of the evidence. Additionally, the court finds that Defendant has presented a persuasive case for a total RMV of $50,352, which shall be allocated to the various accounts under appeal in a manner deemed appropriate by Defendant as explained above. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

IT IS FURTHER DECIDED that the total real market value of the subject property, identified as Accounts 5645021, 5645022, 5645023, 5645024, 5645035, 5645036, 5645037, 5645038, 5645039, 5645040, 5645041, 5645042, 5645043, 5645044, 5645045, and 5645046, shall be adjusted to $50,352 for the tax year 2009-10, based on the evidence presented by Defendant at trial.

IT IS FURTHER DECIDED that Defendant shall allocate the value to the accounts under appeal in the manner Defendant deems most appropriate.

Dated this ___ day of January 2012.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on January 10, 2012. The Court filed and entered this document on January 10, 2012.*