IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

DRAGONFLY HOLDINGS LLC,     )
             )
    Plaintiff,       )  TC-MD 120202C
             )
  v.          )
             )
MULTNOMAH COUNTY ASSESSOR,   )
             )
    Defendant.     ) **DECISION**

Plaintiff has appealed the real market value (RMV) of the subject property, identified in the assessor's records as Account R106611, for the 2011-12 tax year. Trial in the matter was held by telephone October 24, 2012. Plaintiff is represented by Stephen Anderson (Anderson), an Oregon licensed real estate broker with 24 years of experience in that capacity. Defendant was represented by Jeff Brown (Brown) and Stephanie McQuown (McQuown), both of whom are appraisers with the Multnomah County Assessor's office. McQuown has been a real estate appraiser for 16-plus years, 15 of which she spent as an independent fee appraiser in Oregon.

## I. STATEMENT OF FACTS

The subject property is a three bedroom, two bath, single family residential home built in 1979. Anderson testified that the home consists of 1,494 square feet of finished living space (including 368 square feet of finished basement) sitting on a 0.08 acre (3,485 square foot) lot with a 506 square foot two-car built in garage some 7 to 8 miles outside of downtown Portland in an area annexed into the city of Gresham that still has Portland mailing addresses. (Ptf's Ex 1; Def's Ex A at 4-5.) Plaintiff purchased the subject property in June 2011 for $90,000.

Defendant set the real market value (RMV) of the property at $159,620, with $78,500 allocated to the land and $81,120 to the improvements. (Def's Ex A at 3.) The property's

maximum assessed value is $155,810. (Ptf's Compl at 3.) Because that figure is below the property's RMV, the assessed value (AV) is $155,810, per ORS 308.146(2).[1] Plaintiff appealed the values to the Multnomah County Board of Property Tax Appeals (BOPTA) and BOPTA sustained the values. Plaintiff timely appealed to this court, requesting an RMV of $92,900 in the Complaint. (Ptf's Compl at 1.) At trial Anderson testified that he was requesting a "time adjusted" RMV of $90,000. Defendant has asked for an increase in the property's RMV to $190,000.

## II. ANALYSIS

In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.

RMV is defined in ORS 308.205(1) as follows:

"Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

RMV is determined by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the real market value of a property. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); *see also* OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property); Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008). Ultimately, the valuation approach to be used is a question of fact to be determined by the court on the record. *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979).

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's RMV is incorrect on the tax roll. *See* ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev* TC No 4530, WL 914208 at * 2 (July 12, 2001).

Burden of proof requires that the party seeking relief (Plaintiff in this case) provide evidence to support their argument. The evidence that the plaintiff provides must be *competent* evidence of the requested RMV of the property in order to sustain the burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (emphasis added) (citing *King v. Dept. of Rev.* 12 OTR 491 (1993)).

"Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7, WL 879285 (March 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted). Finally, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff's case is based on the purchase price of the subject property in June 2011 for $90,000, and a compilation of sales data for *all* sales of single family residences in Southeast Portland that sold in calendar year 2011 for prices ranging from $80,000 to $100,000. (Ptf's Exs 5-7.)

Looking first at Plaintiff's purchase, Plaintiff bought the property, at an auction, following a bank foreclosure. That fact alone at least sounds an alarm, calling into question whether the price paid was market, or whether the buyer got a deal. Moreover, it is settled Oregon law that one sale does not make the market. *Truitt Brothers, Inc. v. Dept. of Rev.*, 302 Or 603, 609, 732 P2d 497 (1987) (noting that "[u]sually, one sale does not make a market. The basic assumption of the sales comparison approach is that there is sufficient data and information available to provide a pattern or range of indicated value. The sales comparison approach is intended to reflect the market and not just one or two buyers."). In this case the property sold at auction after the prior owner had gone into foreclosure. The property was newly listed for $182,000 on September 29, 2010, and in only approximately three months, had been reduced to $149,900 on January 5, 2011, a decrease of 17.6 percent. (Ptf's Ex 2-1.) Defendant's appraiser McQuown states in her report that in September 2010 the listing "was already reflecting that it was bank owned." (Def's Ex A at 5.) The asking price was further reduced to $139,900 on February 14, 2011. (*Id.*; Ptf's Ex 2-1.) The fact that it sold roughly four months later (June 2011) for approximately $50,000 less than the February 2011 asking price of approximately $140,000, and for less than half the amount of the original listing (in a period of only nine months) suggests that there was distress and that the sale was therefore not an arm's-length transaction.[2]

Plaintiff's representative Anderson, who testified he was a broker with 24 years of experience, valuation training from the Oregon Department of Revenue, and a member of the Clackamas County Board of Property Tax Appeals, argues that the property's 235 days of

---

[2] Plaintiff purchased the property from a bank after it had been on the market for approximately 235 days with a listing history starting at $182,000 in September 2010 and dropping incrementally to $175,000 in November 2010 and $165,000 on December 15, 2010. (Ptf's Ex 2-1.) The price was reduced to $149,900 on January 5, 2011, just days after the applicable assessment date of January 1, 2011, and roughly one month later, on February 14, 2011, the price was reduced $10,000 to $139,900. (*Id.*)

market exposure, including five months at $139,000 before Plaintiff's purchase, strongly suggests that Plaintiff's purchase was in fact a good indication of the value of the property. The court simply draws a different conclusion than Anderson from that data. At the risk of redundancy, the court notes two points (in addition to the court's analysis in the paragraph immediately above). First, the price dropped precipitously in a short period of time. Second, the court does not find nine months of market exposure, mostly during the cooler fall, winter, and spring months, during a period of general economic turmoil, to be sufficient market exposure such as to establish that the purchase price was at market value. This is especially true here because the property was marketed under duress. Accordingly, the purchase price evidence presented by Plaintiff simply fails to prove the assertion that the purchase price was at market value.

The court turns next to Plaintiff's raw sales data. Plaintiff's data, presented at trial by Anderson, shows that there were 175 sales of single family residences in Southeast Portland in calendar year 2011 selling for prices between $80,000 and $100,000, and that of those sales, 119 were bank-owned properties and another 25 were short sales. (Ptf's Exs 5-7.) Anderson testified that those "bank influenced" sales comprised 82.28 percent of the total sales in his search criteria, described above, and that such numbers indicate that those bank influenced transactions represent the market for the time period in question. At first blush, those numbers seem striking. However, Defendant's representative Brown noted on cross-examination that Anderson's sales data pool included *all* single family residential homes in Southeast Portland, among which is a 657 square foot two bedroom, one bath, condominium that sold for $80,000. (Ptf's Ex 5-1.) Brown further brought out on cross-examination that Anderson had confined his search criteria to properties selling for between $80,000 and $100,000 and that he further limited that data pool

to sale price rather than list price. Defendant not only believes Plaintiff purchased the property at a bargain, but that the RMV should be increased approximately $30,000, from $159,620 to $190,000, as addressed by the court in more detail below. Moreover, Defendant further revealed on cross-examination that all of the sales in the generalized data pool occurred in 2011, whereas the applicable assessment date is January 1, 2011. ORS 308.007. Because of the statutory assessment date, a hypothetical buyer purchasing the subject property would not be aware of any market activity in calendar year 2011. The relevant sales data should come from the months leading up to the January 1, 2011, assessment date (*i.e.*, preferably sales occurring in the last half of calendar year 2010, assuming a sufficient number of such sales occurred).

Anderson also asserts that the court should take into consideration the fact that Plaintiff spent approximately $16,000 to get the property repaired to a state where it could be rented, as shown on a spread sheet document that includes handwritten notes stating "Repairs $15,891.61 complete." (Ptf's Ex 4-1.) Anderson asserts that the property needs an additional $14,000 in maintenance and repairs to replace the roof and furnace. (*Id*.) Necessary repairs made by the buyer just after a purchase can constitute a valid deduction from the value of a given property provided they are other than cosmetic or remodeling upgrades. The problem in this case is that Plaintiff's evidence does not establish a baseline market value and the spreadsheet detailing the work allegedly performed after the purchase is not sufficient to establish that the repairs were necessary as opposed to cosmetic. For example, the repairs include "three toilets," "fixtures," "tile floor show[er]," "window blinds," "washer dryer," and "remodeling." (*Id*.) Additionally, Plaintiff did not submit any receipts to substantiate the alleged expenses, most if not all of which appear to fall into the category of unnecessary cosmetic updates (as opposed to the replacement of a faulty roof or malfunctioning furnace, etc.). Thus, while Plaintiff presented a good deal of

information, and argued strenuously, albeit briefly (which the court appreciates), that the court should accept the purchase price as the "fair market value" of the subject property, the court finds the evidence presents an incomplete picture of the property's RMV.

Defendant presented a value estimate through the sworn testimony of McQuown, and an appraisal report she prepared based on four comparable sales, three occurring in the latter half of 2010 and one in March 2011. (Def's Ex A at 10-11.) McQuown, who testified that she had been an appraiser for 16 years, 15 of which were as an independent fee appraiser, and who holds the master residential appraiser designation and is an Oregon registered appraiser 3, explained how she selected her comparable sales. According to the testimony, McQuown based her search criteria on certain features shared by and/or relevant to the subject property: split-level homes within two miles of the subject property, similar in age to the subject, and all of which had below grade finished living space. McQuown considered the three standard approaches to value, as required by the relevant administrative rule, verified her sales, and made adjustments she felt were appropriate to alter the sales prices of her comparables to reflect the differences between those properties and the subject. McQuown's four comparable sales sold for prices ranging from a low of $189,500 to a high of $230,000. The lowest priced sale (comparable number four) involved a home of nearly identical size (1,184 square feet for the comparable versus 1,126 square feet for the subject), with the same total number of rooms and the same number of bedrooms but only one bathroom as opposed to the subject's two bathrooms, that sold for $189,500 in December 2010. The property selling for $230,000 (comparable number one) involved a home essentially identical in size that also had the same total number of rooms and bedrooms, and only one bathroom, that sold in March 2011. Net adjustments to comparable number four were only $1,015, whereas adjustments to McQuown's comparable number one

total $32,140. (Def's Ex A at 10-11.) McQuown made adjustments for market conditions (*i.e.*, time), lot size, quality of construction, room count, and size (*i.e.*, finished square footage).

McQuown testified, as stated in her report, that she considered but rejected both the cost and income approaches because of the age of the home and the fact that the subject property, a single family residential structure, is not typically an income producing property. (*Id*. at 8.) McQuown relied on the sales comparison approach and concluded that the subject property had a RMV of $190,000 as of January 1, 2011. Defendant has asked the court to increase the RMV of the property to $190,000.

McQuown also drew the court's attention to data in her appraisal concerning market conditions and differences between distressed and non-distressed sales. (Def's Ex A at 7.) McQuown's testimony and report reveal that, based on the data used (75 sales for the four month period between October 1, 2009, and January 31, 2010, and 72 sales between October 1, 2010, and January 31, 2011) there was a market decline of 14.72 percent in calendar year 2010 and that "two stratified markets existed around the time of the assessment date justifying the exclusion of distressed and/or duress motivated transactions from RMV consideration." (*Id*.) That data was used by McQuown to support her market (time) adjustments applied to her comparables. It also highlights the fact that Defendant estimated the value based on relevant search criteria and selection of comparable sales, adjusted for changes in market conditions, while Plaintiff relied on the sale of the subject and a pool of unrefined (as well as at least some irrelevant) raw data.

Under ORS 305.412 the court has the statutory authority "to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." The court has previously stated that it "has the responsibility of

/ / /

making an original, independent, and de novo determination of value." *Chart Development*, 16 OTR 9 at 11. (citation omitted).

### III.  CONCLUSION

The court has carefully considered the evidence in light of applicable law and concludes that the real market value of the subject property identified in the assessor's records as Account R106611, was $190,000 as of January 1, 2011.  Accordingly, Plaintiff's appeal is denied and Defendant's request for an increase in value, made at trial, is granted.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and the real market value of the subject property, Account R10661, is increased to $190,000 for the 2011-12 tax year as set forth above.

Dated this ____ day of November 2012.

_____
DAN ROBINSON
MAGISTRATE


***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This Decision was signed by Magistrate Dan Robinson on November 27, 2012. The court filed and entered this Decision on November 27, 2012.***