IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MARY JO AVERY,                          )
                                        )
            Plaintiff,                  )    TC-MD 130170C
                                        )
      v.                                )
                                        )
CLACKAMAS COUNTY ASSESSOR,              )
                                        )
            Defendant.                  )    **DECISION**

Plaintiff appealed the real market value (RMV) of certain unimproved land in the city of

Lake Oswego identified in the assessor's records as Account 05014494. The tax year at issue is

2012-13. Trial was held is Salem on June 24, 2013. Plaintiff was represented by Nick Bunick

(Bunick), Plaintiff's husband and a real estate broker.[1] Defendant was represented by Kathleen

Rastetter, Assistant County Counsel. Bunick testified for Plaintiff, and Geoff Bennett (Bennett),

Senior Appraiser, Clackamas County Assessor's Office, testified for Defendant. Plaintiff's

Exhibits B, C, and D, and Defendant's Exhibits A, B, and D were admitted at trial, the latter two

as rebuttal.

## I. STATEMENT OF FACTS

The subject property is a one acre landlocked parcel located in an area of upscale homes

in the City of Lake Oswego. Plaintiff purchased the property in May 2006 for $475,000.

Plaintiff purchased the land from a friend in the real estate business. According to the testimony,

Plaintiff was told at the time of purchase that the property was a separate legal lot that had been

legally partitioned from the larger 2 acre parcel of which it is a part, the front having a home on

_____

[1] It is not entirely clear to the court whether Bunick was still a broker at the time of trial or whether his status as a broker of some 30 years has lapsed. Regardless, Bunick's knowledge and experience in real estate development was convincingly established at trial.

it. By letter dated June 1, 2007, Plaintiff was informed by the city of Lake Oswego that the city had no record of a partition "which would have been required to create legal one acre parcels in that area." (Ptf's Ex C at 1.) That letter went on to state "both newly *designated* one acre parcels * * * are therefore illegal lots and cannot be improved or developed." (*Id.*)

The RMV on the assessment and tax rolls for the 2012-13 tax year is $334,594. Plaintiff has requested that the value be reduced to $-0-. (Ptf's Compl at 1.) Defendant requests that the court sustain the current RMV of $334,594. (Def's Ans at 1; Closing Arg.)

Bunick testified that both he and his wife, Plaintiff in this matter, are experienced real estate professionals; Plaintiff with more than 30 years of experience selling real estate and Bunick a real estate broker with more than 30 years of experience developing property that included creating more than 30 subdivisions and a major secondary arterial and commercial business development in Lake Oswego just off Interstate 5. The court found Bunick to be very knowledgeable about real estate development in general and about the attributes and details of the subject property and, accordingly, deems him a qualified expert in this case on real estate development.[2]

The evidence shows, and both parties acknowledge, that the subject property was not buildable at the time of Plaintiff's May 2006 purchase, and was not buildable at the time of trial in June 2013. (Def's Ex A at 43; Test of Bunick and Bennett.) The property can be developed, but certain actions must be taken.

The first problem is that, although the county assessor has "created" a new tax lot for the subject property (TL 611), the documentary evidence submitted at trial, including certain of

---

[2] Typically a real estate broker would be deemed qualified in real estate sales and possibly evaluation. However, in this case Bunick did not speak to his experience in those areas, addressing instead only his involvement in real estate development.

Defendant's exhibits, clearly demonstrates that there was no legal partition creating the subject one acre lot known as Tax Lot 611. A letter from the City of Lake Oswego dated June 1, 2007, notes that a Tax Lot 607 consisted of two acres prior to the transfer of the back (or eastern) one acre portion of the property, which came to be designated Tax Lot 611, and that "[t]he problem is that the City has no record of a partition which would have been required to create legal one acre parcels at this location." (Ptf's Ex C at 1.) Defendant submitted a document from the City of Lake Oswego that indicates, in part, that it is addressing an application for a "minor development" that would constitute a "[o]ne-parcel minor land partition to *legalize* Tax Lot 611." (Def's Ex A at 15. (emphasis added).) Finally, Defendant acknowledges in its Summary Appraisal Report that "[t]he only difference between [Defendant's] two comparable properties and the subject is that the subject needs to be formally partitioned with the City of Lake Oswego." (*Id*. at 5.) Thus, Plaintiff was sold a lot that did not legally exist and still owns that "illegal" lot. It appears that the lot can be converted to legal status through the partition approval process. Defendant subtracted $6,460 from his value estimate in that appraisal to account for the partition application fees. (*Id*.)

Assuming the lot was legally partitioned and development allowed, such development would require the creation of a road running through the property in a north/south direction. Bunick testified that the road must be 40 feet wide and 165 feet long. Two partition/development applications filed with the city, one filed in September 2007 and the other in May 2011, indicate that a 40 foot wide road is required for any residential development. (Ptf's Ex D at 3; Def's Ex A at 19-20.) In addition, a Memorandum from the City of Lake Oswego indicates that the street is required and that there must be an additional 10-foot-wide easement for trees, slope, and sidewalk, and that the street is to terminate "at the south property

line." (Def's Ex A at 13-14.) A map of the property indicates that the lot is 165 feet long from the north to the south. (Ptf's Ex B at 1, 3.) Bunick testified that, based on his 30 years of real estate development experience, his conservative estimate of the cost of the road is $175,000. Defendant questioned that figure, but presented no evidence on the cost of the road, and included no adjustment in its appraisal, which is discussed more fully below. Defendant questioned whether Plaintiff would be responsible for the cost of the road, but introduced no evidence to support that line of thinking. The only reliable evidence submitted at trial is Plaintiff's September 2007 development application, and it states that "* * * the *applicant* (i.e., Plaintiff) will be required to extend the 40-foot wide public street through the property * * *." (Ptf's Ex D at 3) (emphasis added).

Additional impediments to development of the subject property include: (1) the lack of direct service for water or sewer. Those services are available to the north of the subject, on Siena Drive, but connection, which is necessary for development of the subject property, is costly; (2) a portion of the property, which Bunick testified consisted of more than one-half of the one acre lot, is a protected natural area due to the presence of wetlands and a stream, rendering it undevelopable. Defendant acknowledged that there were certain existing city codes in place at the time of purchase and still in existence at the time of trial that may impact development, but believes the restrictions might be lifted by action of the Lake Oswego City Council. The court found that testimony and supporting documentary evidence unpersuasive and irrelevant, given that the possible changes are uncertain and prospective because the case concerns the RMV as of the January 1, 2012, assessment date[3]; (3) setback requirements for

---

[3] Defendant introduced evidence and the testimony of Bennett attempting to show that the City of Lake Oswego was considering making changes to those restrictions for residential property. However, that evidence, both documentary and testimonial, did not describe in any detail the nature or extent of the changes. Moreover, Defendant's documentary evidence of the proposed land use changes consisted of a printout of a "blog," which the

building a house which, according to Bunick, require a home 20 feet away from the rear property line and 20 feet back from the road that must be constructed. Bunick testified that the setback requirements for a home result in a situation where any house that could be built on the subject property could not be more than 20 feet deep (front to back), once you account for the development of the road and driveway and remove the half acre of undevelopable land.

Bunick argues that the problems set forth above (that the subject property is not legally partitioned, is landlocked because of the lack of a road; lacks water and sewer; that more than half of the one acre parcel is not legally buildable because it is a protected natural area that cannot be developed, leaving less than one-half acre on which to build; the prohibitive cost of the road; and that the setback requirements) render the property valueless, and has therefore requested the court reduced the value to $-0-.

It is Defendant's position that the property is at least worth the current RMV of $334,594. Defendant submitted an appraisal supporting that value and noted that Plaintiff purchased the property in 2006 for $475,000 and that the property is in an area of upscale homes.

Defendant's appraisal considered, but rejected both the cost and income approaches to value and relied on two sales; a one quarter acre lot (0.27 acres) selling in May 2012 for $320,000, and another quarter acre lot (0.26 acres) selling in July 2012 for $450,000. (Def's Ex A at 4.) Both of Bennett's comparables are developable lots on paved streets with utilities to the properties. (*Id*. at 6-9.) Defendant states in its report that "[t]he two comparable sales show a

court accords little weight. (Def's Ex D at 1.) Also, given the lack of specificity, the document is even less reliable or relevant. For example, the "article" states that the city is planning to "overhaul the city's controversial Sensitive Lands program," and that the "planned changes * * * include removing all private property from the program * * *." (*Id*.) Bunick insists that the "overhaul" discussed in that document is only intended to allow existing homeowners to enlarge their yards by removing a few trees to install a swing set or swimming pool or gain more sunlight in their backyard, but will not affect the development limitations imposed by the protected natural area zoning that impacts the subject property. The court further notes that the subject property has an area that is designated a protected natural area, and that it is unclear whether the Sensitive Lands program is either synonymous with or includes protected natural areas.

range of value of $320,000 to $450,000. Factoring in Application Fees of $6,460 [to have the partition approved by the city], this adjusted range of value supports the Assessor's RMV of $334,594." (*Id.* at 5.) Bennett concludes his valuation analysis by stating that "[t]he final conclusion is that the evidence indicates a Real Market Value of the subject to be $335,000 on January 1, 2012." (*Id.*)

## II. ANALYSIS

In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.[4]

RMV is defined in ORS 308.205(1) as follows:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

RMV is determined by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the RMV of a property, although they need not all be developed. OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered, although all three approaches may not be applicable to the valuation of a given property); *see also Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008). When value is appealed to the court, the approach to be used (or combination of approaches) is a question of fact to be determined by the court upon the record. *Pacific Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979) ("[W]hether in any given assessment one [valuation] approach should be used exclusive of the others or is preferable to another or to a

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

combination of approaches is a question of fact to be determined by the court upon the record.").

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's RMV on the tax roll is incorrect. *See* ORS 305.427. Plaintiff must establish her claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)).

Burden of proof requires that the party seeking relief (Plaintiff in this case) provide evidence to support its argument. The evidence that a plaintiff provides must be *competent* evidence of the requested RMV of the property in order to sustain the burden of proof. *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)) (emphasis added).

"Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (Mar 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

This court has previously noted that value is a range rather than an absolute. *Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977). "The value of property is ultimately a question of fact." *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted). Finally, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff believes the value of the property should be reduced but has presented no market

data to support that position. Nonetheless, the subject property has not been legally partitioned, notwithstanding the sale to Plaintiff, is landlocked, lacks water and sewer, requires the construction of a road in order for the lot to be accessed or developed, and has some issues concerning the wetlands area on a portion of the property. Those factors no doubt affect value. The court has already stated that it finds Bunick qualified to render opinions about property development. The court further finds Bunick's $175,000 estimate for the cost of developing a road 40 feet wide and 165 feet long, and connecting to nearby water and sewer services and bringing those services to the subject property's homesite area, to be reasonable. Moreover, the court cannot, for obvious reasons, accept Bennett's value estimate based on his highest and best use conclusion stated in the report, which is "as a vacant residential lot." (Def's Ex A at 5.) Bennett's comparable sales are two developable lots on paved streets with city services available (water, sewer, electricity). Additionally, the court does not find Defendant's comparable sales to be truly comparable because of their location on a paved street and access to all utilities.

Given the court's authority to determine the real market value on the basis of the evidence before the court, and without regard to the values pleaded by the parties, the court finds that the RMV of the subject property as of January 1, 2012, was $145,000. That figure is well below the current maximum assessed value (MAV) and assessed value (AV) of $299,937. Plaintiff is therefore aggrieved because the AV, based on the court's RMV determination, and in light of the applicable statute – ORS 308.146(1) – is $145,000. The court arrived at that number by subtracting Plaintiff's $175,000 road construction cost from the $320,000 sale price for Defendant's nearby comparable number one. The court recognizes that lot is only 0.27 acres in size. However, the court also believes that half or more of the subject property is impacted by the combination of the protected natural area/wetlands and the loss of land attributable to the

required road and driveway, as well as applicable utility setbacks, leaving the amount of usable land to less than one half acre. Moreover, that comparable is ready for development, is located only approximately 500 feet from the subject property, and sold within months of the applicable assessment date.

(Def's Ex A at 4.)

### III. CONCLUSION

The court has carefully considered the matter and concludes that the RMV of the subject property, Account 05014494, was $145,000 as of January 1, 2012. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted in part and Defendant shall reflect the court's $145,000 real market value determination.

IT IS FURTHER DECIDED that Defendant shall make appropriate adjustments to the assessed value based on the reduced real market value.

Dated this ____ day of August 2013.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on August 12, 2013. The Court filed and entered this Decision on August 12, 2013.*