IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

GREGORY ALAN KNIEBUEHLER, )
)
        Plaintiff, ) TC-MD 110677C
)
   v. )
)
BENTON COUNTY ASSESSOR, )
)
        Defendant. ) **DECISION**

Plaintiff has appealed the value of his home for tax years 2008-09, 2009-10, and 2010-11.

The property is identified in the assessor's records as Account 416976. Trial on the matter was

held by telephone January 10, 2012. Plaintiff appeared on his own behalf. Defendant was

represented by Caleb Nelson (Nelson), Data Analyst and Registered Appraiser, Benton County

Assessor's office.

## I. STATEMENT OF FACTS

The subject property is a five-bedroom, three and one-half bathroom, two-story home on

a roughly one-quarter acre lot. (Ptf's Ex 1-3.) The subject, and all of the other homes in the

neighborhood, which is known as Covey Run subdivision, was built by SandsTrum Homes

between 2003 and 2005. (*Id.*) The subdivision consists of three basic home styles: single-story

ranch-style homes approximately 2100 square feet in size, and two different two-story model

homes that have either roughly 3,500 or 3,700 square feet of living area. The two-story homes

all have eight foot ceilings, with some vaulted ceilings, tile floors in certain areas, and an

extensive list of upgraded features (e.g., "[b]eautiful wood handrailings on painted white spindle

staircase," "custom cabinets," "granite tile countertops," "stainless steel appliances," "security

/ / /

system[s]," "brick accents," "beautifully landscaped front and back yards [with] * * * sprinkler systems," "finished garages," etc.). (Ptf's Ex 1-3.)

Plaintiff's home was built (completed) in 2003 and has a gross living area of approximately 3,613 square feet. (Def's Ex A at 5.) The home has forced air gas heating, air-conditioning, a 640 square foot 3-car garage, two fireplaces, and a jetted tub in the master bathroom. (*Id.*) At the rear of the home there is a 10 foot by 30 foot ground level stone patio, an elevated deck enclosed with wooden railing (including vertical slats or "spindals"), and a 10 foot by 18 foot shed in the back yard. (Def's Ex A at 4.) Plaintiff added the shed and stone patio without permits and the county was unaware of the existence of those features until Nelson inspected the property in conjunction with this appeal.

Plaintiff purchased the property in January 2004 for $319,900. That price included upgraded appliances added by the builder at Plaintiff's request, and an air-conditioning unit.[1]

The real market values (RMV) on the assessment and tax rolls for the years at issue are $488,210 for the 2008-09 tax year, $449,950 for the 2009-10 tax year, and $397,450 for the 2010-11 tax year (a value sustained by the county board of property tax appeals (BOPTA)). Plaintiff has requested a reduction in the RMV to $295,000 for all three tax years. Plaintiff based this request on the presentation of a comparable sale which sold for $295,000 in May of 2009. (Ptf's Ex 2-1.) Plaintiff also presented evidence in the form of a table of sales, representing all sales data for all houses built by SandStrum in the neighborhood from 2003 through 2011. (Ptf's Ex. 4-1.)

/ / /

---

[1] All of the homes were built "air conditioned ready," meaning that they were wired and otherwise equipped for air conditioning, with the prospective buyer being afforded the opportunity to add the air conditioning unit at the time of purchase or thereafter. (Ptf's Ex 1-3; Ptf's Testimony.) Plaintiff opted to have the air conditioning unit installed as part of the purchase price. (Ptf's Testimony.)

The maximum assessed values (MAV's) and assessed values (AV's) for the years at issue are $317,468 (2008-09), $326,992 (2009-10), and $336,802 (2010-11). Plaintiff requests the court set the AV at $298,000.

Defendant appraised the property for this appeal and estimated the value of the subject to be $458,000 as of January 1, 2008, $410,000 as of January 1, 2009, and $399,000 as of January 1, 2010. (Def's Ex A at 2.)

Defendant also presented evidence showing that the sale Plaintiff relied on as a comparable was a bank foreclosure sale, including the sale history and chain of title for that property. (Def's Ex C.)

## II. ANALYSIS

The issue in this case is the RMV of the subject property, a five bedroom, three and one-half bath, 3,600 square foot two story home, on a one-quarter acre lot, as of January 1, 2008, January 1, 2009, and January 1, 2010.

Oregon law defines RMV for property assessment and taxation purposes as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).[2] As indicated above, the assessment dates in this case are January 1, 2008, 2009, and 2010. ORS 308.007.

///

///

///

---

[2] All references to the Oregon Revised Statutes (ORS) are to 2007 because that was the edition in effect for two of the three years under appeal. However, there are not relevant differences in the 2007 and 2009 statutes related to RMV in this case.

While there are three recognized methods for valuing property,[3] the sales comparison approach is generally viewed as most appropriate for valuing residential property. Under the sales comparison approach, the court looks at arm's length sales transactions of similar property to determine a correct RMV. *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003).

OAR 150-308.205-(A)(2)(c) sets forth the requirements for the use of the sales comparison approach:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arm's-length market transactions."

This court has previously noted that:

> "[a]djustments are a key component in evaluating properties. According to *The Appraisal of Real Estate*:
>
> 'Ideally, if all comparable properties are identical to the subject property, no adjustments will be required. However, this is rarely the case * * *. After researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences.' Appraisal Institute, *The Appraisal of Real Estate* 307 (13th ed 2008.)
>
> Raw, unrefined price information is not enough."

*Zakharyuk v. Clackamas County Assessor*, TC-MD 080357B, WL 5273295 at *2 (Dec 12, 2008).

The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted). This court has previously noted that value is a

/ / /

---

[3] An administrative rule promulgated by the Oregon Department of Revenue instructs that the three approaches to value--sales comparison, cost, and income--be considered in determining a property's value, but recognizes that all three approaches may not be applicable in a given case. OAR 150-308.205-(A)(2) (2009). Because the subject property is owner occupied and does not generate any income, neither party used the income approach in valuing Plaintiff's property. The cost approach has some relevance, but is less reliable than the sales comparison approach because the home was five to seven years old on the applicable assessment dates.

range rather than an absolute. *Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977). That being said, the court by statute must determine a specific value as of a specific date.

By statute, Plaintiff has the burden of proof and must establish an error in the record assessment by a "preponderance" of the evidence. ORS 305.427. This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971); *see also Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987) (where the Oregon Supreme Court explained that the derivation of the word "preponderance" is Latin in origin and "translates to 'outweigh, be of greater weight.' ").

Burden of proof requires that the party seeking relief (Plaintiff in this case) provide evidence to support their argument. The evidence that a plaintiff provides must be competent evidence of the requested RMV of the property in order to sustain the burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Lebeck v. Multnomah County Assessor* (*Lebeck*), TC-MD No 100404D, WL 534207 at *1 (Feb 16, 2011).

Plaintiff's case hinges largely on the sale of one similar home in the same subdivision that sold on May 29, 2009, for $295,000. (Ptf's Exs 2-1; 4-1.) Plaintiff noted at trial that that property, located at 2300 Broadway Street in Albany, sold in 2008 for $358,319, and then resold roughly 15 months later (May 2009) for the $295,000 figure. Plaintiff disagrees with Defendant's assertion that the May 2009 sale of that property was not arm's-length, noting that it was originally listed on March 18, 2008, for $450,000, and that the listing price of the property

was reduced repeatedly over the next year until the asking price had been reduced to $339,900 on March 31, 2009.  (Ptf's Exs 2-1, 2-2.)  It was only then that the property sold for the $295,000 price.

Defendant agrees with those figures, but submitted an exhibit showing the historical chain of title for that property that helps explain the reason for the great decline in the numbers Plaintiff presented.  (Def's Ex C.)  Defendant notes that the property at 2300 Broadway Street was foreclosed on by the lender due to the buyers' default on their loan and sold at public auction February 14, 2008, for $358,319.20, Flagstar Bank being the high bidder.  (*Id*. at 1 – 2.)  Several days later Flagstar Bank conveyed the property to Federal National Mortgage Association ("Fannie Mae") for the same amount Flagstar paid for the property ($358,319.20).  (*Id*. at 4.)  Fannie Mae apparently listed the property for sale with Coldwell Banker and ultimately sold the property May 29, 2009, for $295,000.  (*Id*. at 3.)

One sale of a similar property, under what clearly appears to be distressed or extraordinary circumstances, a sale not adjusted to account for any such factors or physical differences between that property and the subject, is insufficient to establish an error in the value of the property under appeal.  One sale does not make the market.  *Truitt Brothers, Inc. v. Dept. of Rev*. (Truitt Bros.), 302 Or 603, 609, 732 P.2d 497 (1987) (noting that "[u]sually, one sale does not make a market.  The basic assumption of the sales comparison approach is that there is sufficient data and information available to provide a pattern or range of indicated value.  The sales comparison approach is intended to reflect 'the market' and not just one or two buyers.")  That is especially true where, as here, the sale history for the comparable property relied on (2300 Broadway Street) was purchased by a bank at public auction, resold to a federally

established mortgage loan security institution (Fannie Mae[4]), and then sold roughly a year later at a price that appears to the court to be nothing short of a bargain. According to Plaintiff's own evidence, the home is 3,549 square feet. (Ptf's Ex 3-1.) The $295,000 sale price amounts to $83 per square foot for a fairly new 11 room home sporting five bedrooms, three and one half bathrooms and sitting on a one-fifth acre lot. (*Id*.) Moreover, that same home sold in 2006 for $440,000, or $124 per foot. (Ptf's Ex 4-1.)

Plaintiff also presented a table of sales which, according to his testimony, represents all sales data for the neighborhood for houses built by SandsTrum Homes occurring between 2003 and 2011. (Ptf's Ex 4-1.) However, that table simply presents raw, unrefined data. Without analysis or explanation by an expert trained in property appraisal, the exhibit does nothing to inform the court on the value of the subject property. For example, for the three years at issue, there are 12 sales, five of which sold for $414,000 to $452,000, and six of the other seven sold for $345,500 or more. (Ptf's Ex 4-1.) Only the one bank foreclosure sale sold for Plaintiff's requested value of $295,000. Plaintiff did not present an appraisal or even a written opinion of value prepared by a real estate broker or other real estate professional.

/ / /

---

[4] According to its website:

"Fannie Mae was chartered by Congress in 1938 to support liquidity, stability, and affordability in the secondary mortgage market, where existing mortgage-related assets are purchased and sold. Our charter does not permit us to originate loans or lend money directly to consumers in the primary mortgage market.

"Our most significant activities are securitizing mortgage loans originated by lenders into Fannie Mae mortgage-backed securities – which we call Fannie Mae MBS – and purchasing mortgage loans and mortgage-related securities for our mortgage portfolio. We obtain funds to purchase mortgage-related assets for our mortgage portfolio by issuing a variety of debt securities in the domestic and international capital markets. We also make other investments that increase the supply of affordable housing."

http://www.fanniemae.com/portal/about-us/governance/our-charter.html? (last modified September 23, 2011).

By contrast, Defendant's appraiser Nelson, a man with nearly 20 years of appraisal experience, including 16 years as an independent fee appraiser, appraised the property using both the sales comparison and cost approaches. (Def's Ex A.) Nelson presented nine sales, all within one mile of the subject, and eight of which are in the same subdivision. The sales occurred in 2007, 2008, and 2009 (three sales for each calendar year to provide value estimates for the three tax years at issue) and, after adjusting for age, time, size, and other amenities, Nelson estimated the value of Plaintiff's home to be $458,000 on January 1, 2008, $410,000 on January 1, 2009, and $399,000 on January 1, 2010. (*Id*. at 5 – 7.) Nelson also valued the property under the cost approach and arrived at an indicated value of $462,512 as of January 1, 2008, and $459,623 as of January 1, 2009. (*Id*. at 13.)

Plaintiff is a self-described "numbers guy" who worked for 12 years as a financial analyst for Hewlett-Packard, and is currently employed as a business planning manager. Like many "numbers guys," Plaintiff made the mistake of thinking that valuing his property was simply a matter of presenting a bunch of numbers to the court. Nelson, by contrast, is a trained real estate appraiser who presented a thorough, albeit brief, comprehensive appraisal conforming to appraisal industry standards. Plaintiff has failed to persuade the court by a preponderance of the evidence that there is an error in the record assessment, and that the RMV of his home should be reduced. As for Plaintiff's AV reduction request, no reduction is warranted where RMV is not reduced, at least, not in this and most other valuation cases. Plaintiff clearly misunderstands Measure 50, as codified in ORS 308.146(1) and (2).

/ / /

/ / /

/ / /

III.  CONCLUSION

The court concludes that Plaintiff has failed to meet the burden of proof in his quest for a reduction in real market value for tax years 2008-09, 2009-10, or 2010-11, for the property identified as Account 416976.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of July 2012.


_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on July 25, 2012.  The Court filed and entered this document on July 25, 2012.*