IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

CANDICE WEISCHEDEL,                    )
                                       )
            Plaintiff,                 )    TC-MD 120162C
                                       )
      v.                               )
                                       )
MULTNOMAH COUNTY ASSESSOR,             )
                                       )
            Defendant.                 )    **DECISION**

Plaintiff has appealed the real market value (RMV) of a four unit apartment complex

identified in the assessor's records as Account R160583. The tax year at issue is 2011-12.

Plaintiff timely appealed from an order of the Multnomah County Board of Property Tax

Appeals (Board), which sustained the property's RMV.

Trial on the matter was held by telephone October 1, 2012. Plaintiff was represented by

Greg Ford (Ford), an Oregon licensed real estate broker who is married to Plaintiff. Defendant

was represented by Jeff Brown (Brown) and Barry Dayton (Dayton), both of whom are

appraisers employed by Defendant and who testified at trial. Dayton, whose name appears on

Defendant's appraisal report, is an Oregon Registered Appraiser III, with 20 years real estate

experience, mostly working in the private sector before joining the assessor's staff in September

2011. (Def's Ex A at 19.)

I. STATEMENT OF FACTS

According to the parties' testimony and the documentary evidence, the subject property is

a four unit apartment complex (fourplex) on Southwest Martha Street in Portland, Oregon, built

in 1969. (Ptf's Ex 1; Def's Ex A at 5, 11.) The building is a two story structure with four units

of approximately identical size.[1] The parties agree that each unit has two bedrooms and one bathroom, that there is no covered parking, and that the property is located within one-half block of State Highway 10, which, according to the uncontroverted testimony of Ford, is a fairly busy thoroughfare. (Ptf's Ex 1 at 2; Def's Ex A at 12, 14.)

Ford further describes the property in a two page letter submitted to the court as Exhibit 1 as follows: "The subject property is a stacked fourplex with two lower units and two upper units. The bottom units have no privacy on [their] 5'x8' and 5'x12' patios. The tenants living above walk by the lower units to go up stairs to [their] units." (Ptf's Ex 1 at 2.) Ford further states that "[t]here are no yards, garages, carports, washer and dryer hook-ups, [or] fireplaces." (*Id*.)

Defendant placed a total RMV on the subject property of $347,080. (Ptf's Compl at 4.) The property's maximum assessed value (MAV) is $348,210. (*Id*.) Oregon law provides that assessed value (AV) is the lesser of RMV or MAV. ORS 308.146(2).[2] Thus, in this case the property's AV is $347,080. (Ptf's Compl at 4.)

Plaintiff unsuccessfully appealed those values to the Board and timely appealed the Board's order sustaining the values to this court. Plaintiff has requested a reduction in the RMV to $250,000, with a $91,477.45 allocated to the land and $158,522.55 to the structure. (Ptf's Compl at 1.) Plaintiff also requested that the AV be reduced to $250,000. (*Id*.) Defendant requests that the court sustain the current values. (Def's Ans.)

Ford testified that the subject property was listed for sale for approximately 10 months, that the asking price in January 2011 was $325,000, and was reduced to $275,000 around the end

---

[1] While it is not completely clear to the court, it appears as though the parties differ slightly in their opinions on the size of the property, although the disagreement, if indeed there is one, is minor. Dayton's report indicates that each of the units is 785 square feet whereas an e-mail drafted by Plaintiff to Marc and Kathy Rogers states that the units are approximately 750 square feet. (Ptf's Exs 5, 2; Def's Ex A at 12.)

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

of January or early February 2011. Dayton's testimony and report indicate that the final asking price in August 2011 was $285,000. (Def's Ex A at 5.) Ford further testified that Plaintiff had received three offers for the property for prices between $230,000 and $275,000. According to his testimony, Plaintiff rejected the $230,000 offer and the $275,000 offer was withdrawn after the prospective buyer inspected the property. There was no independent written corroborating documentation to support that testimony, such as a written offer from the alleged prospective buyers or their representatives (real estate agents or brokers), or even an e-mail to that effect.

Plaintiff also submitted two comparative market analyses (CMAs) prepared by real estate brokers. (Ptf's Exs 2-15.) One CMA was prepared in September 2012 by Marc Rogers (Rogers). (Ptf's Ex 3.) The other analysis was prepared by Brent Maxson (Maxson). (Ptf's Ex 8.) Neither broker testified at trial. Rogers apparently concludes with a value estimate of $315,000 and Maxson concludes with a "Recommended Price" of $300,000. (Ptf's Exs 4, 15.) [3]

While Rogers did not testify, his market analysis grid sheet reflects that he considered one triplex listed for $307,000 with a sale pending, one canceled listing of a triplex offered for $215,000, two fourplexes with expired listings at $335,000, and three sales of older and slightly smaller four and three unit properties, two of which sold in May 2012 for $304,900 and $308,000, and the third in July 2012 for $240,000. (Ptf's Ex 3.) Ford testified that Rogers concluded with a value range of $282,900 to $310,000. The only evidence to support Ford's testimony regarding Rogers' purported value range is a handwritten note on a piece of paper that appears to be a compilation of portions of three different documents that includes those figures

/ / /

---

[3] Ford testified that Rogers gave him a "list price" of between $282,900 and $310,000. However, the actual single page grid sheet market analysis does not include a list price or value estimate, etc., and an e-mail submitted by Plaintiff, written to Ford by Rogers, states that he is attaching his market analysis and that "[t]he numbers show approximately $315,000 however it didn't move at $285,000 and there is a new 4-plex listing at 5041 SW Beaverton Hillsdale Hwy for $299,000." (Ptf's Ex 4.)

and the words "price $300,000." (Ptf's Ex 2.) The court has no way of knowing who wrote those numbers on that paper.

Maxson's CMA is more professional looking (and slightly lengthier) than Rogers', and presents a "Recommended Price" of $300,000. (Ptf's Exs 7, 15.) Maxson also evaluated a combination of active and expired listings and one sale of a fourplex in Beaverton for $310,000 with a sales date of August 2, 2012. (*Id*. at 13, 14.) Two of Maxson's remaining four properties were expired listings, a third was an active listing of a fourplex in Beaverton for $282,900, and the fourth was a fourplex in Beaverton with a sale pending at $339,000. (Ptf's Exs 12-14.)

Ford acknowledged on cross-examination that neither of the brokers who performed Plaintiff's CMAs made any adjustments to their comparable properties, which included a mix of current and expired listings, sales and pending sales. He further acknowledged that neither of the brokers inspected the interior of any of the units within the subject property, although, according to Ford, the brokers spoke with Plaintiff's tenants, some of whom allegedly told them (the brokers) that they might move, and feared that the rents might be increased. Ford also testified on cross that he told both brokers that the reason he or Plaintiff had requested a CMA was because Plaintiff was involved in a property appeal.

Dayton's appraisal considered all three approaches to value, but rejected the cost approach due to the age and effective condition of the property. (Def's Ex A at 10, 8.) Dayton selected three comparable sales for his "market approach," and after making what he believed to be appropriate adjustments, concluded that the comparables had adjusted sale prices ranging from $349,060 to $384,000. (*Id*. at 8.) Dayton concluded with a final rounded value of $368,000 from his comparable sales analysis. (*Id*.) Dayton's income approach generated an indicated value of $366,600 based on an indicated market rent of $2,600 per month multiplied by

a gross rent multiplier of 141. (*Id*. at 9.) Dayton notes in his report that "[t]he subject was deemed to be slightly under market rent at the actual rents reported by the Plaintiff of $2,510 per month for all four units." (*Id*.) Dayton's final reconciled retrospective opinion of RMV as of January 1, 2011, is $367,000. (*Id*. at 10.)

## II. ANALYSIS

In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.

RMV is defined in ORS 308.205(1) as follows:

"Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

RMV is determined by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the real market value of a property. OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered, although all three approaches may not be applicable to the valuation of a given property); *see also Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008). The valuation approach to be used (or combination of approaches) is a question of fact to be determined by the court upon the record. *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979) ("[W]hether in any given assessment one [valuation] approach should be used exclusive of the others or is preferable to another or to a combination of approaches is a question of fact to be determined by the court upon the record.").

/ / /

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's RMV is incorrect on the tax roll. *See* ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)).

Burden of proof requires that the party seeking relief (Plaintiff in this case) provide evidence to support its argument. The evidence that a plaintiff provides must be competent evidence of the requested RMV of the property in order to sustain the burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002).

"Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (March 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted). Finally, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

As indicated above, the RMV currently on the assessment and tax rolls is $347,080. While Plaintiff requests a reduction in that value to $250,000, the evidence presented does not persuade the court that there is an error in the value on the rolls, never mind that a reduction to $250,000 is warranted. Defendant provided a more comprehensive and persuasive value

estimate of $367,000, but asked that the court merely sustain the current RMV of $347,080. This court has previously noted that value is a range rather than an absolute. *Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977). Given that the court finds Plaintiff's evidence to be unpersuasive and that Defendant's evidence suggests a value only slightly higher than that on the rolls, coupled with the fact that Defendant has requested that the court sustain the current roll values, the court finds that the values on the assessment and tax rolls, as sustained by the Board, should be upheld.

### III.  CONCLUSION

The court has considered the evidence and concludes that Plaintiff's request for a reduction in the real market value of the subject property, identified as Account R160583, for the 2011-12 tax year is not supported by the evidence and that Plaintiff has failed to meet its burden of proof. Plaintiff's evidence is simply not persuasive. Moreover, the court further concludes that the values currently on the assessment and tax rolls should be sustained. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of November 2012.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on November 19, 2012. The Court filed and entered this document on November 19, 2012.*