IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

BIG MOOSE DEVELOPMENT INC., )
)
   Plaintiff, ) TC-MD 120251C
)
 v. )
)
MULTNOMAH COUNTY ASSESSOR, )
)
   Defendant. ) **DECISION**

Plaintiff has appealed the real market value (RMV) of property identified as Account

R172807 (subject property), for the 2011-12 tax year. Trial in the matter was held by telephone

December 5, 2012. Plaintiff was represented by Steven Anderson (Anderson), Oregon Licensed

Real Estate Broker, with 24 years of experience in real estate. Defendant was represented by Jeff

Sanders (Sanders), Oregon Registered Appraiser III, and Jeff Brown (Brown), Residential

Appeals Lead Appraiser, Multnomah County Assessor's office. Sanders, who prepared the

appraisal report for Defendant, began his appraisal career as a residential fee appraiser in the late

1990s, then appraised property for the Washington County Assessor's office between 2000 and

2006, before moving to the Multnomah County Assessor's office in 2006. Plaintiff's exhibits 1

and 2 and Defendant's exhibit A were admitted into evidence at trial.

## I. STATEMENT OF FACTS

The subject property is a 4,857 square foot single-family residential home with five

bedrooms and either three or four bathrooms.[1] (Ptf's Ex 1-1; Def's Ex A at 3.) The home sits on

a nearly one-third acre lot (12,900 square feet). (Ptf's Ex 1-1; Def's Ex A at 3.) Other amenities

include a gourmet kitchen, wood floors in the kitchen, dining room, and living room, a master

bedroom with a private balcony, "extensive woodwork," open beam and vaulted ceilings, and

---

[1] Anderson submitted the listing document for the subject property and it indicates that the home has three bathrooms. Sanders' appraisal report, however, indicates that the subject has four full baths. (Def's Ex A at 3, 7; Ptf's Ex 1-1.)

four fireplaces. (Ptf's Ex 1-1.) The home is located in close proximity to downtown Portland in a desirable neighborhood known as Portland Heights/Green Hills. (Ptf's Ex 1-1, Def's Ex A at 3.)[2] Anderson testified that the home was in Southwest Portland, built in 1939, and is of average quality.

Plaintiff purchased the property for $357,500 on or about October 7, 2011, which is roughly 10 months after the applicable assessment date in this case.[3] (Ptf's Ex 2-1.) Plaintiff purchased the property after the home was foreclosed on by the lender. Plaintiff's representative Anderson was unsure of the date when the lender acquired the property, but Brown, who represented Defendant, testified that the deed indicated the lender's acquisition through foreclosure was on June 9, 2010, "for $900,000." Anderson objected to the testimony, arguing that the deed was not submitted into evidence. The court overruled the objection, after asking Anderson whether he had explored the details of the foreclosure, to which Anderson responded he had not. However, Anderson acknowledged that he had no information to the contrary. The court further noted that Anderson had ample opportunity to apprise himself of the foreclosure information, given that Anderson was relying on Plaintiff's purchase from the bank, and that Defendant's value report indicates that Plaintiff purchased the property in October 2011 "as a bank owned property." (Def's Ex A at 3.)

The RMV on the assessment and tax rolls for the 2011-12 tax year is $688,120, with $222,000 allocated to the land and $466,120 to the structures (the home). (Ptf's Compl at 3.) The property's maximum assessed value (MAV) is $611,840. Because that number is less than the RMV currently on the assessment and tax rolls for the 2011-12 tax year, the assessed value

---

[2] At trial, Sanders amended the neighborhood description set forth in his appraisal report. Anderson did not dispute the amended description of the neighborhood and the listing Anderson submitted indicates that the subject is in the Green Hills subdivision.

[3] Anderson testified, and a written narrative submitted with his exhibits also states, that the date of sale was October 24, 2011. The date on the RMLS listing history, Plaintiff's Exhibit 2-1, indicates that the property sold October 7, 2011. The court finds the difference of 17 days to be of no consequence.

(AV) is the lesser $611,840, as required by statute. *See generally* ORS 308.146(2) (providing for an AV that is the lesser of a property's RMV or MAV, except in certain limited statutorily enumerated circumstances).

Plaintiff appealed the assessor's values to the Multnomah County Board of Property Tax Appeals (Board) and the Board sustained the values. Plaintiff timely appealed the Board's decision to this court, requesting a reduction in the RMV to $357,500 based on Plaintiff's purchase of the property for that amount in October 2011. Defendant submitted an appraisal report concluding with an opinion of value (RMV) of $825,000, and at trial requested that the court increase the RMV to that figure in accordance with the authority given the court under ORS 305.412 (2011).

## II. ANALYSIS

A.      *Valuation and burden of proof – laws, rules, and accepted procedures*

In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232. [4]

RMV is defined in ORS 308.205(1) as follows:

"Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

For purposes of property assessment and taxation, RMV is determined by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the RMV of a property, although they need not all be developed. OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered, although all three approaches may not be applicable to the valuation of a given property); *see also Allen v. Dept. of*

_____

[4] Unless noted otherwise, the court's references to the Oregon Revised Statute (ORS) are to 2009, references to the Oregon Administrative Rules (OAR) are to the current version.

*Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); Appraisal Institute, *The Appraisal of Real Estate* 130 (13th ed 2008). When value is appealed to the court, the approach to be used (or combination of approaches) is a question of fact to be determined by the court upon the record. *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979) ("[W]hether in any given assessment one [valuation] approach should be used exclusive of the others or is preferable to another or to a combination of approaches is a question of fact to be determined by the court upon the record.").

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's current RMV is incorrect. *See* ORS 305.427. Plaintiff must establish its claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)).

Burden of proof requires that the party seeking relief (Plaintiff in this case) provide evidence to support its argument. The evidence that a plaintiff provides must be *competent* evidence of the requested RMV of the property in order to sustain the burden of proof. *Poddar v. Dept. of Rev.*, (Poddar), 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)) (emphasis added).

"Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (March 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.,* 16 OTR 9, 11 (2001) (citation omitted). Finally, "the court has jurisdiction to determine

DECISION  TC-MD 120251C                                                                                       4

the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

B.    *The parties' evidence and value approaches*

Plaintiff's appeal relies primarily on the sale of the subject property on October 7, 2011, for $357,500. (Ptf's Exs 1-2; 2-1.) Anderson testified that the property was exposed to the market through the Multiple Listing Service (MLS), and was continuously exposed to the market for 236 days before Plaintiff's acquisition. Anderson submitted the MLS listing history for the subject property. (Ptf's Ex 2-1.) That exhibit supports Anderson's testimony regarding the property's listing history. As is relevant to this appeal, the home was initially listed on February 3, 2011, for $529,900, followed by continual reductions in the asking price to $389,900 in September 2011, shortly before Plaintiff purchased the property for $357,500 on October 7, 2011.

Plaintiff's representative Anderson acknowledged that he has not been inside the home and, when questioned by the court, acknowledged that Plaintiff resold the property approximately three months after its $357,500 purchase, for $695,000 following "some work" done to the property by Plaintiff. Brown objected to any testimony regarding the nature and extent of the work done to the home because there were no supporting documents to substantiate the testimony and Anderson admitted he had not been inside the home. The court overruled the objection, noting that by statute magistrates are not bound by the formal rules of evidence or procedure and that each side was relying on some information for which no supporting documentation had been submitted. When the court accepts evidence in these situations, the question is not whether the court will consider the evidence, but rather what, if any, weight the court will accord such evidence.

With regard to the work reportedly done to the home, Anderson testified that he was reviewing public records on the permits taken out for the work done to the home after Plaintiff's

DECISION  TC-MD 120251C                                                              5

purchase and that, according to that information, there were two permits issued in November 2011, one for plumbing to allow the installation of new showers and a new bathtub, and another for an electrical permit allowing for the installation of a new bathroom circuit, three recessed lights, switches on all of the closet lights (which Anderson presumed was done to replace the older style pull string lighting fixtures installed in the closets of older homes), the installation of additional electrical outlets to comply with current building code requirements, and the removal and replacement of a 200 amp electrical service panel (possibly replacing fuses with circuit breakers). Anderson further testified that two more permits were issued, one in January 2012, and another in February 2012, allowing for the installation of a total of four tankless water heaters.

There is no testimony or evidence as to the cost or added value of that work, or whether the work was actually completed. Anderson testified that Plaintiff, whom he represents, would not give him any documents regarding the work allegedly done to the home. Moreover, Plaintiff would not let Defendant's employees onto the property after its purchase, depriving Defendant of the opportunity to review the nature and extent of the work done to the home after Plaintiff's purchase, as well as the overall quality and condition of the home. Because Plaintiff did not provide detailed information regarding the cost or value of the work Plaintiff had done to the home, and declined Defendant's requests to access the interior of the home, the court is unable to determine how much, if any, of the difference between Plaintiff's purchase and sale prices is attributable to the work done during Plaintiff's four months of ownership. Evidence of that work is therefore given no weight by the court.

Both Brown and Sanders emphasized that Plaintiff's subsequent resale of the subject property for $695,000 occurred less than four months after Plaintiff purchased the home for $357,500. Defendant further noted that the February 8, 2012, resale of the subject property occurred after only a five day listing period (i.e., the home sold in five days). Anderson

responded that the market had improved, but acknowledged on cross-examination that the nearly 100 percent price increase between the purchase and resale of the subject property (from $357,500 to $695,000, a difference of $337,500) was not due solely to an improvement in the real estate market.

Defendant's appraiser Sanders submitted an appraisal report that considered all three approaches to value, but rejected the cost approach because of the age of the home (70 years old), and the income approach because single-family residential homes typically are not rented and therefore generally do not generate income. (Def's Ex A at 4-6.) For his comparable sales approach, Sanders evaluated the market and selected three comparable properties all within one-half mile or less of the subject property, with comparable number one essentially next door to the subject. (*Id*. at 4, 7.) Sanders testified that his comparable number one was extremely similar to the subject property in terms of age, location, amenities, and size, and therefore required only nominal adjustments. That property sold for $840,000 several months before the January 1, 2011, assessment date. (*Id*. at 7.) Sanders comparables 2 and 3 sold for $900,000 and $785,000, respectively, several months before the applicable assessment date. (*Id*.) Sanders adjusted for time, view, size and differences and other amenities (bathrooms and fireplaces, etc.), and arrived at adjusted sale prices of $825,100, $877,500, and $838,500. (*Id*.) Sanders reconciled value for the subject property is $825,000. (*Id*. at 6.)

Sanders testified that the court should not accept the Plaintiff's purchase price as an accurate indication of value because arm's-length sales were occurring during the January 1, 2011, assessment date time period, and that Plaintiff purchased the property from a bank. Sanders testified that banks sometimes have more arduous purchase requirements and sell properties "as-is," and without any repairs. Moreover, Sanders testified that a study of market conditions revealed a difference of $150,000 in the median price of distressed versus nondistressed sales.

C.    *Court's evaluation of the evidence*

The court has been presented with two different types of evidence.  Plaintiff presents the unadjusted purchase price for the subject property occurring ten months after the assessment date.  Plaintiff bought the home for $357,500.  The Oregon Supreme Court has ruled that "[a] recent sale of the property in question is important in determining its market value."  *Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335 (1973).  The court went on to state that "[i]f the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value."  *Id.*  (citations omitted).

Plaintiff purchased the subject property from a lending institution after the lender foreclosed on the property.  That foreclosure occurred 16 months before Plaintiff's purchase.  Moreover, Plaintiff's purchase occurred 10 months after the assessment date and Plaintiff has made no adjustments for market conditions (i.e., time) between the January 1, 2011, assessment date and the October 7, 2011, purchase date.

"This court has been reluctant to consider 'foreclosure' sales as 'arm's length transactions' because such sales 'may well involve an element of compulsion on the part of the seller.' "  *Voronaeff v. Crook County Assessor*, TC-MD No 110361C, WL 1426847 at *4 (Apr 25, 2012) (citations omitted); *see also Yarbrough v. Marion County Assessor*, TC-MD No 070229C, WL 4440216 at *4 (Dec 12, 2007) (footnote omitted) (noting that the court closely examines sales of bank-owned properties because "property purchased through foreclosure may well involve an element of compulsion on the part of the seller").

Here the bank held the property for 16 months before Plaintiff's purchase, and there is no information other than the listing history to address the purchase and sale.  While the property was listed for sale on the open market by a real estate agent, and was exposed for a period of 236 days, the bank reduced the asking price from $529,900 in February 2011 to $389,900 in

September 2011 (a period of approximately 8 months), with price reductions occurring approximately every two weeks. (Ptf's Ex 2-1; Sanders' Trl Test.) Additionally, as noted above, Plaintiff did not adjust the sale for time nor present evidence on market conditions (i.e., whether the market was steady, declining, or improving). Finally, Plaintiff sold the property four months after its purchase for $695,000, nearly doubling its money. In the end, Plaintiff's numbers provide the court with little guidance in determining the property's RMV.

Defendant, on the other hand, has presented a well reasoned appraisal report that evaluated three sales quite similar to the subject property selling just months before the assessment date for prices ranging from a low of $785,000 to a high of $900,000. (Def's Ex A at 7.) Defendant's adjusted sale prices tightened that range considerably, with a low of $825,100 and a high of $877,500. (*Id.*) Sanders concluded that the comparable sales indicated market value for the subject property as of January 1, 2011, of $825,000. Sanders placed the most weight on comparable sale number one, which had an adjusted sale price of $825,100.

### III. CONCLUSION

After carefully considering the evidence in light of applicable law (including accepted valuation principles), the court concludes that the RMV of the subject property, as of January 1, 2011, was $825,000. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DECISION  TC-MD 120251C                                                                                    9

IT IS FURTHER DECIDED that Defendant's evidence supports an increase in the RMV of the subject property to $825,000, and that, pursuant to ORS 305.412, the court is ordering an increase in the RMV of the subject property, identified in the assessor's records as Account R172807, to $825,000.  Defendant shall allocate that value between land and improvements as it deems appropriate.

Dated this ____ day of January 2013.

_____

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on January 11, 2013. The Court filed and entered this document on January 11, 2013.*