IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

CELILO INN, LLC,                          )
                                          )
            Plaintiff,                    )      TC-MD 140135N
                                          )
     v.                                   )
                                          )
WASCO COUNTY ASSESSOR,                    )
                                          )
            Defendant.                    )      **FINAL DECISION**

The court entered its Decision in the above-entitled matter on July 31, 2014.  The court

did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days

after its Decision was entered.  The court's Final Decision incorporates its Decision without

change.

Plaintiff appeals the real market value of property identified as Account 15235 (subject

property) for the 2013-14 tax year.  On May 1, 2014, Defendant moved the court to dismiss

Plaintiff's Complaint as untimely under ORS 305.280(4).  By Order of the court filed May 20,

2014, the court denied Defendant's motion.  That Order is incorporated herein.  A trial was held

in the Oregon Tax Courtroom in Salem, Oregon, on June 25, 2014.  Zaryab Sheikh (Sheikh),

LLC member, appeared and testified on behalf of Plaintiff.  Darlene K. Lufkin (Lufkin),

authorized representative, appeared telephonically and testified on behalf of Defendant.

Plaintiff's Exhibits 1 to 6 and Defendant's Exhibits A to D were received without objection.

## I.  STATEMENT OF FACTS

The subject property consists of 3.99 acres of "bare land property located on East 2nd St"

with "unobstructed views of the Columbia River, The Dalles Dam, Mount Hood and City of The

Dalles."  (Def's Ex B at 48.)  The subject property is located between a "manufactured home

park" to the east and "Plaintiff's motel property and [a] vacant .82 [acre] parcel" to the west. (*Id.*) The subject property is the beneficiary of a 20 foot wide "non-exclusive access easement." (Def's Ex B at 67.) Lufkin testified that the subject property has utilities to the lot and a road right to the property. (*Cf.* Def's Ex B at 71.) Lufkin testified that the subject property, like the area in general, is rocky.

According to the Regional Multiple Listing Service (RMLS) data provided by Defendant, the subject property was initially listed for $288,000 on February 5, 2011, and was kept on the market for 328 days. (Def's Ex C at 97.) The listing price was adjusted several times during that period, being reduced to a low of $179,900 during the week of April 12, 2011, and then raised again to $249,000 by the time the listing expired December 31, 2011. (*Id.*) The subject property was re-listed for $175,000 on April 24, 2013, and remained on the market 114 days until a sale was reported pending on August 16, 2013. (*Id.*) Sheikh testified that Plaintiff purchased the subject property for $200,000 on October 30, 2013.[1] According to the RMLS data, the subject property was listed on the market for at total of 442 days since February 2011.[2]

Sheikh testified that he negotiated with Del Ray Properties, Inc. (Del Ray), to purchase the subject property together with a 0.25 acre "split code" property (Account 15186) and an abutting 0.82 acre property (Account 15185). (*Cf.* Def's Ex C at 87.) Sheikh testified that he arrived at a sales agreement with Del Ray to purchase the three properties for a sum total of $200,000, but that Del Ray owed back taxes on the properties so the properties were transferred to the previous owners, Ronald and Carina Schmidt (the Schmidts). (*Cf.* Def's Ex C at 93.) A construction lien was also attached to the properties. (Ptf's Ex 4 at 1.) The properties were

---

[1] In contrast, RMLS reports the subject property's list price on the October 30, 2013, sale date was $150,000. (*See* Def's Ex C at 97.)

[2] Defendant characterizes the data from the RMLS history as comprising three listing periods of 158 days, 160 days, and 114 days, for a total of 432 days. (Def's Ex C at 84.)

transferred from Del Ray to the Schmidts by a deed in lieu of foreclosure executed September 10, 2013, and recorded October 30, 2013. (Def's Ex C at 85-86.) Sheikh testified that the Schmidts agreed to sell the three properties together to Plaintiff for the amount of $200,000. (*Cf.* Ptf's Ex 2 at 1.[3]) On October 30, 2013, a warranty deed was recorded in Wasco County transferring ownership of the three tax properties from the Schmidts to Plaintiff with the "true and actual consideration for this conveyance" being $207,000. (Def's Ex C at 87.)

Lufkin testified that the subject property's fluctuating listing history, combined with the deed in lieu of foreclosure in the chain of title, indicated to her that the sale of subject property was a distressed sale. Lufkin's appraisal report stated that the subject property's highest and best use is "residential use although [multifamily] and manufactured home park are outright permitted uses." (Def's Ex A at 2.) In considering sales comparisons, Lufkin provided data on 23 residential bare land sales from 2010 to 2013,[4] but concluded that "[n]one of these sales are comparable to the subject property in size, utility and potential." (Def's Ex A at 8.) Lufkin testified that she applied a "market-related cost approach" to determine the real market value of the subject property. Lufkin proceeded by adjusting the subject property's 1996 adjudicated value to account for the view it offers and Plaintiff's asserted issues with location, access, and topography to arrive at an adjusted base value at "the lower end of the properties [*sic*] value range." (Def's Ex A at 2.) She testified that she trended the adjusted base value based on the residential area market to arrive at the subject property's 2013 real market value of $301,030, or $1.73 per square foot. (Def's Ex A at 2-3.)

/ / /

---

[3] Plaintiff's Exhibit 2 is a Sales Agreement between Plaintiff and Del Ray, and only specifically listed Accounts 15186 and 15235.

[4] Pages 6 to 8 of Defendant's Exhibit A list 26 property sales, but three sales are duplicated.

In support of that value determination, Lufkin considered five May 2014 listings that "are in [the] vicinity of [the] subject [property] with similar views" to "represent the perceived high end of the market." (Def's Ex A at 11.) Lufkin considered listings A to C as the "most typical comparables" to the subject property and determined the listings to have an average real market value of $2.50 per square foot. (*Id*.) Lufkin noted that that value does not support Plaintiff's requested real market value of $0.70 per square foot. (*Id*.) Lufkin testified that she did not consider the income approach to determine the real market value of subject property, but noted that the subject property could move to an income-producing use.

Plaintiff appealed the real market value of subject property to the Wasco County Board of Property Tax Appeals (BOPTA), which reduced the real market value from $205,690 to $168,670. (*See* Ptf's Compl at 2.) Plaintiff received reductions in the real market value for Accounts 15185 and 15186 as well. The combined real market value of the three Accounts was determined by BOPTA to be $250,260. (Ptf's Ex 6 at 1.) Sheikh testified that he was satisfied with BOPTA's value determination of $70,970 for Account 15185, and that he considered Account 15186 too small to be worth appealing. (*Cf. id*.)

Plaintiff requested that the subject property's 2013-14 real market value be reduced to $121,388, based on the ratio of assessed values between subject property and the assessed values of the other properties included in Plaintiff's October 2013 purchase price. Even though Lufkin's appraisal of subject property concluded a real market value in excess of that determined by BOPTA, Lufkin testified that the increase in real market value would not change the amount of property tax due. Defendant requested that the subject property's real market value determined by BOPTA be sustained.

/ / /

## II. ANALYSIS

The issue before the court is the real market value of the subject property as of the assessment date for the 2013-14 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas Co.,* TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1),[5] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2013-14 tax year was January 1, 2013. *See* ORS 308.007; ORS 308.210.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). There are three approaches of valuation that must be considered, although all three approaches may not be applicable: the cost approach, the sales comparison approach, and the income approach. *Allen v. Dept of Rev.*, 17 OTR 248, 252 (2003); OAR 150-308.205-(A)(2)(a). The real market value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001).

Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. *See* ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). If the evidence is inconclusive or unpersuasive, Plaintiff will have failed to meet its burden of proof. *See Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.    *Plaintiff's requested real market value*

Plaintiff relies upon its October 2013 purchase price to establish the real market value of the subject property.

> "A recent sale of the property in question is important in determining its market value.  If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value. * * *."

*Kem v. Dept. of Rev.* (*Kem*)*,* 267 Or 111, 114, 514 P2d 1335 (1973).  "In the absence of data indicating that the price paid was out of line with other market data material, we believe a recent sale to be one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive."  *Ernst Brothers Corp. v. Dept. of Rev.* (*Ernst*), 320 Or 294, 300, 882 P2d 591 (1994) (internal quotation marks omitted).

To be a very persuasive indicator of real market value a sale must be "recent."  *Kem*, 267 Or at 114.  "Whether a transaction is so recent as to be persuasive of present value will depend upon the similarity of conditions affecting value at the time of the transaction and conditions affecting value at the time of the assessment."  *Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974).  A sale date that is not too distant from the assessment date will be presumed recent unless evidence of change in the underlying conditions is presented.  *See id.* at 427-28 (reversing lower court's determination to disregard sale occurring nearly two years after assessment date because no evidence of change in market conditions).  Although the purchase of subject property occurred nearly 11 months after the January 1, 2013, assessment date, Defendant stated that "[t]he land market has remained mostly flat," and no evidence was

presented of any shift in underlying conditions. (Def's Ex A at 8.) The court concludes that the October 2013 purchase of the subject property was "recent" as of January 1, 2013.

A sale of the subject property must also be a "voluntary, arm's length transaction" in order for it to be a very persuasive indicator of real market value. *Kem*, 267 Or at 114. Defendant concedes that the subject property may have been purchased in an arm's-length transaction, but disputes that the transaction was voluntary because the transfer of subject property from Del Ray to the Schmidts was accomplished by a deed in lieu of foreclosure and because the erratic price-listing history of subject property showed uncertainty and duress influenced by when the subject property was listed and who listed it. (Def's Ex C at 83-84.)

As the grantor in the deed in lieu of foreclosure, Del Ray "transferr[ed] its property expressly to forgo foreclosure action, which implies duress on the part of the grantor." *HOF Financial I, LLC v Marty Wynne Deschutes County Tax Collector*, TC-MD No 110913C, WL 4458174 at *4 (Sept 26, 2012). It does not necessarily follow that the grantee in a deed in lieu of foreclosure is under duress in a subsequent sale of the property, but it does give rise to such an inference when the sale occurs a little over a month after the transfer. Sheikh testified that the Schmidts are financially sound and were not motivated by nontypical market conditions in the sale of subject property to Plaintiff, but provided no evidence of that for the court to consider.

Since 2011, the subject property's listing experienced a 31 percent reduction over five months, followed by a 25 percent increase that held for six months before withdrawal and relisting 16 months later at a 30 percent reduction, and a further reduction by 14 percent in its listing at the time of sale six months later. Without any evidence offering an alternative explanation, those significant fluctuations in listing price suggest Del Ray was compelled to sell

by nontypical market motivations and that those motivations are reflected in the price negotiated with Plaintiff. *Cf. Thorpe v. Benton County Assessor*, TC-MD No 060468D, WL 283126 at *3 (Jan 3, 2007) (unexplained 23 percent drop in value in approximately six months indicated sale by bank was distressed).

Because Plaintiff has provided no evidence to support a conclusion that the sale of the subject property was voluntary and the listing history indicates the negotiated sales price was a product of nontypical market motivations, the court concludes that sale of the subject property is not persuasive of the real market value of the subject property under *Kem*. Furthermore, the purchase price value of $0.70 per square foot is significantly "out of line" with the $2.50 price per square foot of comparable listings. *Cf. Ernst*, 320 Or at 300. The court is unable to determine the real market value of the subject property from Plaintiff's purchase price.

B.      *Defendant's requested real market value*

Lufkin's appraisal of subject property concluded a real market value of $301,030, which is greater than the real market value determined by BOPTA. Lufkin testified that no change in the property tax would result from an increase in the real market value, so Defendant requests that the real market value found by BOPTA be sustained. The court concludes that no change to the subject property's 2013-14 real market value is supported in this case.

III.  CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiff failed to prove by a preponderance of the evidence that the real market value of the

/ / /

/ / /

/ / /

subject property was $121,388 as of January 1, 2013. No further change to the 2013-14 real market value of the subject property is supported. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of August 2014.


_____
ALLISON R. BOOMER
MAGISTRATE


*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by __mailing__ to: 1163 State Street, Salem, OR 97301-2563; or by __hand delivery__ to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within __60__ days after the date of the Final Decision or this Final Decision cannot be changed.*

*This Final Decision was signed by Magistrate Allison R. Boomer on August 18, 2014. The Court filed and entered this Final Decision on August 18, 2014.*