IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

KMT, INC.,                                          )
                                                   )
            Plaintiff,                             )    TC-MD 160110R
                                                   )
    v.                                             )
                                                   )
WALLOWA COUNTY ASSESSOR,                           )
                                                   )
            Defendant.                             )    **FINAL DECISION**[1]

Plaintiff appeals the real market value of properties identified as Accounts 4087, 4088,

4089, 4090, 4091 and 4092 (subject properties) for the 2015-16 tax year. A trial was held in the

Oregon Tax Court on August 19, 2016, in Salem, Oregon. Jack Thompson (Thompson)

appeared and testified on behalf of Plaintiff. Randy Wortman (Wortman) appeared and testified

on behalf of Defendant. Plaintiff's Exhibits 1 through 25 were received without objection.

Defendant's Exhibits A through G were received without objection.

## I.  STATEMENT OF FACTS

The subject properties are six undeveloped contiguous lots in the Lake Shore Tracts near

Wallowa Lake in Joseph, Oregon. (Def's Ex A at 1; Ex C at 2.) Thompson testified that he has

been a builder in Oregon since 1981 and specializes in in-fill lots and lots with challenging slope

issues. Thompson testified that KMT purchased the subject properties in the 1970s for $1,000

and in 1998, Thompson began efforts to develop and sell the lots on behalf of KMT. He testified

that the properties were either actively on the market or a pocket listing with a local realtor from

1998 through 2016.

---

[1] This Final Decision incorporates without change the court's Decision, entered February 15, 2017. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

Thompson testified that in 2000 he took an engineer to visit the properties and assess the feasibility of developing the lots in light of terrane with slopes nearing a 60 percent grade. Thompson testified that the engineer advised him that it was not feasible to develop all of the lots due to the slope in light of road standards for the area.

In May 2012, Thompson listed the subject properties with two separate brokers at $139,900, or $23,317 per lot. (Ptf's Exs 9–11.) Over the next three years, Thompson testified, he engaged in a series of systematic price reductions, and he also advertised the property by mail and on the internet, both locally and nationally. He testified that by June 30, 2015, having received no showings or offers, he reduced the price to $59,900.

Thompson testified that in addition to the physical problems with the slope, he encountered resistance from residents in the area who opposed development near Lake Wallowa. Because of the properties' steep slope, Thompson testified, he attempted to obtain permission to use a road located above the subject properties for access, but his efforts were thwarted by neighbors. Another neighbor instituted litigation to use the access road and discovered that someone had altered a document at the title company to make it appear the access road was not public. (*See* Ptf's Exs 20, 21.)

The subject properties had three open water certificates and three active certificates. Those certificates allow a property owner access to the water supply and are required for any development. Thompson testified that he did not pay dues on the certificates each year, and the debt had accumulated to over $28,000 by August 2015. (Ptf's Ex 7.)

In late January 2016, Thompson received an offer of $50,000 for all six lots from an undisclosed potential buyer. (Ptf's Ex 16.) Thompson made a counter offer to sell four lots for $50,000 or all six for $75,000. (Ptf's Ex 17.) The counteroffer was rejected and the subject

properties were sold for $50,000 to an individual Thompson identified as one of the neighbors opposed to his development. (Ptf's Ex 18.) Thompson testified that he accepted the offer because he did not believe he could sell the properties for more given the topographical difficulties and neighbors in opposition. As part of the final sale, Thompson negotiated to surrender his water certificates to the water board in exchange for forgiveness of the debt. (Def's Ex F.) The final sales price for the subject properties was not adjusted due to the surrender of the water certificates. (*Id.*)

Wortman testified that he has been an appraiser for Wallowa County for 21 years. In his research to determine the value of the property, he testified, he found no comparable arms-length transactions in the area of the subject properties for at least 10 years. He opined that the recent sale of the subject properties should not be considered as conclusive evidence of the real market value of the lots because of the contemporaneous debt forgiveness related to water certificates for the properties. Wortman testified that he does not consider the outstanding water bills as running with the land, but the County Attorney advised him the value of the certificates should be added to the cash paid for the properties to determine their actual sales price. Wortman determined that as of January 1, 2015, only three houses could be built on the lots and he valued those three lots at $18,000 each. Wortman also testified that public use of the access road above the subject properties remains a legal uncertainty. Finally, Wortman agreed with Thompson's testimony regarding the active community sentiment in opposition to development near Lake Wallowa.

## II. ANALYSIS

The issue before the court is the real market value of the subject properties for the 2015-16 tax year. "Real market value is the standard used throughout the ad valorem statutes except

for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD 020869D, WL 21263620 at *2 (Mar 26, 2003). Real market value is defined in ORS 308.205(1), which states:[2]

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2015-16 tax year is January 1, 2015. ORS 308.007; ORS 308.210. The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). The three approaches of value that must be considered are (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. OAR 150-308-0240(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id*. The real market value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.,* 16 OTR 9, 11 (2001). The cost and income approaches are not applicable to the subject properties because they are vacant lots.

Plaintiff relies upon the sale of the subject properties in June 2016, as evidence of their real market value as of the assessment date, January 1, 2015. "A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev. (Kem)*, 267 Or 111, 114, 514 P.2d 1335 (1973). "In the absence of data indicating that 'the price paid was out of line with other market data material, [a recent sale is] one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is

/ / /

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

not conclusive.' " *Ernst Brothers Corp. v. Dept. of Rev.,* 320 Or 294, 300, 882 P.2d 591 (1994) (citations omitted).

Under *Kem,* a sale of the subject property must be "recent." 267 Or at 114. Plaintiff sold the subject properties in June 2016, which is somewhat recent to the January 1, 2015, assessment date. The sale must also be a "voluntary, arm's length transaction." *Id.* This case is unusual in that both parties appear to agree that there was an element of compulsion or duress related to the sale of the subject properties. The parties also agree that there are no recent comparable sales of vacant land which is similar in nature and location to the subject properties. While an element of duress may knock out of consideration a sale in many property tax cases, in this case the extended marketing period for the properties and the extreme efforts made by Thompson with regard to the community opposition support his contention that the sales price represented the maximum he could have obtained for the subject properties. Given those circumstances, it appears to the court that the sale represented a close approximation of the real market value of the subject properties. Although there is a considerable gap of time between the assessment date and the sale date, there was no evidence presented to show that market prices in the location were changing.

Finally, the court finds as unpersuasive Defendant's argument that the relinquishment of water certificates and associating discharge of indebtedness should be added to the sale price of the subject properties to determine their value. There was no evidence that the water certificates' debt ran with the land. Rather, the water debt appears to have been analogous to a utility bill, which is personal in nature. Also, the discharge of debt was predicated on returning the certificates. This indicates that the certificates had a value roughly equal to the debt. Lastly, the offer for the property did not mention the water certificates and the contract price did not change

when the certificates were removed.  This indicates that as to the sale of the subject properties, the water certificates did not affect their value.

The court is persuaded that the relatively recent sale of the subject properties represents the best indicator of real market value.  The court finds that the value of the subject properties as of January 1, 2015, was a cumulative total of $50,000, or $8,333.33 per lot.

## III.  CONCLUSION

After carefully considering the testimony and documentary evidence presented, the court finds that the subject properties' real market value was $8,333.333 per lot for the 2015-16 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.  Defendant shall correct the 2015-16 tax roll to reflect that the real market value of the properties identified as Accounts 4087, 4088, 4089, 4090, 4091 and 4092 was $50,000, or $8,333.33 per lot.

Dated this ____ day of March, 2017.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on March 8, 2017.*